## Richmond.

### BALTIMORE & OHIO RAILROAD CO. *v.* FEW'S EX'OR.

December 3, 1896.

1. INSTRUCTIONS—*Lack of evidence to support.*—An instruction should not be given when there is no evidence to support it. In the case at bar there was no evidence to support one of the instructions given, and the tendency of the instruction was to mislead the jury.

2. INSTRUCTIONS—*Objection by party asking it—Estoppel.*—Where an instruction has been asked for by a party, and is modified by the court so as to conform exactly to another instruction asked for by such party and given by the court, he cannot be heard in the appellate court to object to the modification which thus conforms to what he has asked for and obtained.

3. RAILROAD COMPANIES—*Duty to persons at public crossings—Proper care and diligence—Case at bar.*—A railroad company is liable for a personal injury inflicted on a passenger at a public crossing, if its agents or servants in charge of a moving train saw him in a position of danger, or by the use of due diligence, might have seen him, and failed to exercise proper care and due diligence to stop the train and prevent it from striking him. But what is proper care and due diligence is to be determined by the facts and circumstances of the particular case. In the case at bar, the decedent who attempted to cross the track in front of a rapidly moving train, by his own negligence and recklessness, directly and proximately, contributed to his own death.

Argued at Staunton.     Decided at Richmond.

Error to a judgment of the Circuit Court of Shenandoah county, rendered April 13, 1895, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the evidence. After the evidence was

concluded, the plaintiff, Few's Executor, offered the following instructions:

"1. The court instructs the jury that the plaintiff's decedent is presumed to have exercised due and proper care at the time he was killed, and that the burden of proving that he was negligent is upon the defendant.

"2. The court instructs the jury that it was the duty of the defendant's employees, who were controlling the engine and train of cars on the morning of October 19, 1892, to have exercised ordinary care and diligence in keeping a lookout to avoid injuries to the said W. H. Few, and to warn him of approaching danger, as well as to have exercised great care and diligence in avoiding the injury to him after having seen him in danger.

"3. The court instructs the jury that if they believe from the evidence that W. H. Few, through the negligence of the defendant, was in terror of an emergency for which he was not responsible, and for which the defendant was, he acted wildly and negligently and lost his life in consequence, said negligent conduct, under such circumstances, is not contributory negligence. In such case the negligent act of the defendant is the proximate cause of the injury.

"4. The jury are further instructed that a higher degree of care and diligence is required of railroad company at public crossings, than on ordinary roadbed of railroad, and this care and diligence is increased in proportion to the travel over the crossing, and its location in a city or town as compared with sparsely settled country, and the negligence of the company is to be determined by its conduct in relation to the same.

"5. The court further instructs the jury that W. H. Few had a right to rely on the performance of the duties of the agents of the defendant by the same, and to suppose that on a frequented crossing within the corporate limits of the town of Woodstock, they would obey the ordinance of said town,

both as respects the signals and the speed it prescribes, but
such reliance does not excuse plaintiff's intestate, if the jury
believe from the evidence that plaintiff's instestate, W. H.
Few, contributed to his own death by his own want of ordi-
nary prudence and care, and such contributory negligence
on the part of W. H. Few was the immediate and proximate
cause of his death.

"6. It was the duty of defendant to use ordinary care, not
only after discovering the dangerous position of the decedent,
W. H. Few, but in keeping a look out to warn him of ap-
proaching danger, as well as to use due care in running its
train over the public highway described in the evidence, and,
if said crossing was within the corporate limits of Woodstock
according to its ordinances, and a failure on the part of de-
fendant in any of these respects was presumptive evidence of
negligence on the part of defendant, justifying the jury in
finding a verdict for plaintiff, provided such negligence was
the immediate and proximate cause of the killing of said W.
H. Few, and defendant has not shown by a preponderance of
evidence that want of ordinary prudence and care on the part
of W. H. Few, was the immediate and proximate cause of
his death.

"7. Mere negligence, or want of ordinary care or caution
upon the part of W. H. Few, will not disentitle plaintiff to
recover, in this case, unless it was such that, but for that neg-
ligence, or want of ordinary care and caution, the misfortune
could not have happened, nor if the defendant, might, by the
exercise of care on its part, have avoided the consequence of
the neglect or carelessness of W. H. Few.    *Va. Mid. R. R.
Co.* v. *White*, 84 Va. 504.

"8. The plaintiff is entitled to recover in this case if the jury
believe from the evidence that the death of W. H. Few re-
sulted from the failure of the defendant to use ordinary care
and vigilance to prevent the injury, and if the defendant re-
lies for its defense on the contributory negligence of said Few,

the burden of proving such contributory negligence is upon the defendant. If the plaintiff claims a right to recover in this case notwithstanding the contributory negligence of Few, if any, on the ground that the defendant could have prevented such accident notwithstanding such contributory negligence, if any, then the burden of proving that the accident could have been so avoided is on the plaintiff. *Va. Mid. R. Co.* v. *White*, 84 Va. 506-7.

"9. In ascertaining the amount of damages plaintiff is entitled to recover in this case, if any, the jury will take into consideration:

"I. By fixing the same at such sum as would probably be equal to the earnings of the deceased, taking into consideration the age, business, capacity, and experience and habits, health, energy and perseverance of the deceased, during what would probably have been his lifetime if he had not been killed.

"II. By adding thereto the value of his service in the superintendence, attention to and care of his family, of which they have been deprived by his death.

"III. The physical pain of the deceased, as well as the mental suffering of the surviving members of his family.

"IV. The loss to his family in reference to his moral and intellectual training.

"10. If the jury find for the plaintiff under all the evidence in this case they should assess his damages at such a sum as under the evidence to them should seem just and fair, not in excess of the amount claimed in the declaration.

"11. If the jury believe from the evidence that the defendant was bound to maintain and keep the crossing in evidence described in good and safe condition, and that the defendant negligently failed so to do, and by reason of such failure W. H. Few came to his death, and further believe that such failure so to do was the immediate and proximate cause of his death, then the jury should find for the plaintiff."

The defendant objected to each of these instructions, but the court overruled the objection and gave the instructions as asked, to which ruling of the court the defendant excepted.

The defendant then offered certain instructions, but the rulings of the trial court thereon are sufficiently set forth in the opinion of this court.

There was a verdict in favor of the plaintiff for $2,250, which the defendant moved the court to set aside because contrary to the law and the evidence, but the court refused to set aside the verdict, and entered judgment thereon for the plaintiff, and the defendant again excepted.

*Williams & Bro.* and *J. Bumgardner*, for the plaintiff in error.

*Wm. R. Alexander* and *Walton & Walton*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is an action of trespass on the case, brought in the Circuit Court of Shenandoah county, by Few's Ex'or against the B. & O. R. R. Co., to recover damages for the death of the plaintiff's testator, caused, as alleged, by the negligence of the defendant company.

Few was killed by one of the defendant company's freight trains on the morning of October 19, 1892, while attempting to drive his cow across the defendant company's road at North street crossing in the town of Woodstock.

At the first trial of the case the declaration contained no allegation that the crossing was defective, and that by reason of its defective condition Few lost his life, but the verdict of the jury was for the plaintiff, and damages assessed at $1,500, which verdict the court below set aside on the motion of the defendant company, as contrary to the law and the evidence; whereupon the plaintiff twice amended his declaration, alleg-

ing that the proximate and immediate cause of Few's death was the defective condition of North street crossing, which it was the duty of the defendant company to keep in good and safe condition; and a second trial of the case resulted also in a verdict for the plaintiff, assessing damages at $2,250. This verdict the court refused to set aside on the motion of the defendant company, and a writ of error was awarded by this court. At the trial the defendant company took four bills of exceptions to the rulings of the court.

We will consider first the exception to the introduction in evidence, by the plaintiff, of an ordinance of the town of Woodstock in relation to the speed of trains running through the town, and a copy of a notice of the mayor of September 29, 1892, to the supervisor of the Valley Division of the defendant company's road, calling his attention to the ordinance, epecially in view of the then approaching fair to be held at Woodstock October 4th, 5th, 6th, and 7th, 1892. The contention is that the ordinance is invalid; that the council of Woodstock had no authority in law to make such an ordinance. We deem it unnecessary, however, to pass upon the validity of the ordinance, as the evidence is wholly inadequate to show that its violation was the proximate cause of the accident resulting in the death of Few. The introduction of this evidence could not, therefore, have been at all damaging to the defendant company, especially in view of instruction No. 5, as given by the court for the plaintiff.

At the conclusion of the testimony in the case, the court, at the instance of the plaintiff, gave to the jury eleven instructions, to all of which the defendant company objected, and, at the instance of the defendant company, gave five instructions, to which the plaintiff made no objection, so far as the record discloses.

The instructions asked for by the plaintiff and given, when read in connection with the instructions given for the defend-

ant company, submitted, we think, the issues fairly and rightly to the jury, with the exception of plaintiff's instruction No. 3, which is as follows:

"The court instructs the jury that if they believe from the evidence that W. H. Few, through the negligence of the defendant, was in terror of an emergency for which he was not responsible and for which the defendant was, he acted wildly and negligently and lost his life in consequence, said negligent conduct, under such circumstances, is not contributory negligence. In such case the negligent act of the defendant is the proximate cause of the injury."

There may be a state of facts under which this instruction, as given, would be good law, but upon the evidence set out in this record, its tendency was to mislead the jury. There is not the slightest evidence to sustain a conclusion that the plaintiff's testator, through the negligence of the defendant company, was placed "in terror of an emergency," and by reason thereof lost his life, and this instruction should not therefore have been given.

After the instructions asked for by both the plaintiff and the defendant company had been given, and the jury had viewed the grounds and surroundings where the accident occurred, the defendant company presented the following instruction:

"The court further instructs that it was the duty of W. H. Few, in approaching the crossing on the 19th of October, 1892, before going upon the track or attempting to cross it, to use his eyes and ears for the purpose of avoiding danger, and if the jury believe from the evidence that he neglected to do so, and attempted to cross the track in front of a rapidly moving train, in full view and hearing, and was killed in so doing, and that his own act, his own negligence, was the proximate and immediate cause of his death, or contributed to it, they should find for the defendant." But the court declined to give the instruction as offered, and added thereto

the following qualification, viz: "provided the jury further believe from the evidence that after said Few was seen by the defendant's servants in charge of the train to be in a position of danger, or might by due diligence have been seen, it was *impossible* to stop the train, or otherwise prevent the train from striking and killing said Few." To the action of the court in so modifying the instruction the defendant company excepted, and took its bill of exceptions thereto.

This instruction, as modified by the court and given to the jury, is *in totidem verbis* as instruction No. 3 already asked for by the defendant company, and given by the court; and were it not improper for this court to seemingly sanction an instruction that is erroneous, the defendant company would not be heard to object to an instruction that it had asked for and obtained. The error in the instruction as given is in the use of the word "impossible" in the addendum made thereto by the court. Had the word "impossible" been omitted, and the addendum made to read: provided the jury further believe from the evidence that after said Few was seen by the defendant's servants in charge of said train to be in a position of danger, or might by due diligence have been seen, they exercised proper care and due diligence to stop the train and prevent it from striking said Few—the instruction would have been without objection.

What is proper care and due diligence is to be determined by reference to the surrounding circumstances, and the instruction as given was calculated to mislead the jury, as the proof does not show, nor even tend to show, that the servants of the defendant company in charge of the train discovered, or could have by due diligence discovered, Few's peril, and failed to exercise proper care and due diligence to stop the train and prevent its striking him. *Seaboard, &c., R. Co. v. Joyner's adm'r*, 92 Va. 354.

This brings us to the consideration of the only remaining bill of exceptions taken to the ruling of the court below, and

this is to the refusal of the court to set aside the verdict of
the jury as contrary to the law and the evidence, and grant
the defendant company a new trial.    An extended examina-
tion of the evidence would serve no good purpose, as we are
of the opinion that the case is controlled absolutely by the
decision of this court in *Johnson's adm'r* v. *Chesapeake, &c.,*
*R. Co.,* 91 Va. 171, unless differentiated by the proof as to
the condition of North street crossing, and unless it be shown
that the proximate and immediate cause of the accident, re-
sulting in the death of Few, was the defective condition of
the crossing.

    The only witnesses introduced by the plaintiff who testify
at all as to the condition of the crossing are John Clower, a
youth about sixteen years of age, Isaac Lewis, and A. S.
Parker.    All that Clower says as to this is: "there was a
hole at the south end of the crossing, midway between the
rails at the end of the planks, and that was the only place I
noticed.    The hole was there when he was struck and big
enough to get his (Few's) boot in."    The witness does not
say that Few caught his foot in the hole described, or that
there were any indications that he did.    He only says: "Mr.
Few started towards me across the track, and was about the
center of the track when he was hit, and it looked to witness
either as if he caught his foot or stumbled."    Parker says:
"The wood work in the crossing was a little rotted, and there
was a hole in it which had a board nailed over it; that cross-
ing is kept in repair by railroad people, and new crossing
made since last trial of this cause was made by the railroad
people."    Lewis says: "When Few was struck he was about
the center of the track in a stooping position, and that, when
he went on the track, he made no halt and was going pretty
fast; witness thought Few was under excitement and lost his
presence of mind when he went on."    This witness also says
the crossing was good.    There is no such conflict in the evi-
dence as to the condition of the crossing, which, under the

rule applicable to its consideration, would exclude the defendant company's evidence on this point, and its evidence is clear and conclusive that the crossing was in good condition, and that the accident could not have been caused by its defective condition. The witness Ramey says that he examined the crossing on the day of the accident, and before the body of Few was removed, and found it in perfect condition. Witness Morrison states that he was the first person to get to Few, and, because of his bare foot, thought he might have gotten his foot caught, and he walked to the crossing, examined it carefully, found it in good condition and found no place where his (witness') foot could get caught; that he tried to see if he could get his foot in any place and could not "crossways or lengthways of the crossing." If, therefore, the hole in the end of the plank described by Clower, was in fact there, and the witness Morrison be in error in saying that there was no place "crossways or lengthways in the crossing" into which he could get his foot, it is clear that if Few caught his foot in this hole he was not in the crossing as used by the public in passing over the track, but in his reckless effort to cross the track in front of the rapidly approaching engine he had borne to the south end of the crossing, and gotten off the crossing proper, and it was not then in the power of those in charge of the train to avoid striking him, even if they had discovered his peril.

. It was argued with earnestness by counsel for the defendant in error (the plaintiff in the court below) that the facts shown in the record that one of Few's shoes was off and lying on or near the track after he was killed, and that the big toe of his foot had been torn from its socket, was sufficient to sustain a finding by the jury that he was killed by reason of having gotten his foot hung in the crossing, but we do not so understand the testimony. It is true that one foot was shown to be bare, but it does not appear that the big toe was torn out. The only proof on this point is the testimony

of the witness Fravel, who was the undertaker, and prepared Few's body for burial. In describing the condition of the body, witness says: "The big toe was cut off and hanging by a thread, and the next toe bent back, shoe off one foot."

The day on which the accident occurred was clear, the view of the track, certainly for fifteen feet from the crossing, was unobstructed at least a thousand feet, the whistling of the engine, ringing of the bell, and the noise of the approaching train had attracted the attention of a number of persons, all of whom were more distant from the track than Few, who, though a man advanced in years (sixty-eight years of age), was in the possession of all his faculties. His sight and hearing were unimpaired, and that he, in fact, saw the approaching train does not admit of a doubt, for plaintiff's own witnesses say that it was in full view. The fireman, who was the only person on the train who did or could have seen him, saw him when within fifteen feet of the track, had every reason to suppose that he (Few) would stop when he reached the track, and not attempt to cross it in front of the approaching train. Though Few halted, he did not stop, and failing to heed the warnings that had been given him, stepped on the track and was struck by the engine; all of which occurred in a moment of time. The engineer was at his post on the right of the engine, while Few approached the track from the left side and went upon it in front of the train, that the engineer was unable to see him until he was struck and thrown from the track.

It may, therefore, be said that, upon the face of the evidence, under the strict rule applicable to its consideration, it conclusively appears that the deceased, by his own negligence and recklessness, directly and proximately contributed to the act which caused his death.

For these reasons we are of opinion that it was error in the court below to overrule the motion of the defendant company

to set aside the verdict of the jury as contrary to the law and
the evidence, and its judgment must be reversed and annulled,
and the cause remanded for a new trial, to be had in accord-
ance with the views expressed in this opinion.

*Reversed.*