Syllabus.

---

BRAMMER'S ADMINISTRATOR v. NORFOLK & WESTERN RAILWAY
Co.

June 15, 1905.

Absent, Cardwell, J.

1. RAILROADS—*Public Crossing—Personal Injury—Failure to Give Cross-
ing Signal—Contributory Negligence—Case at Bar.*—One who takes
no precautions for his own safety, but, without looking or listening
for approaching trains, sits far back in a covered wagon and drives
his team upon a railroad at a public crossing and is injured by a
collision with a passing engine, is not entitled to recover damages of
the railroad company for such injury, even though the engineer
failed to sound the crossing signal. His own contributory negli-
gence is the proximate cause of his injury, and this bars his re-
covery, unless after his danger was discovered, or by the exercise of
ordinary care by those in charge of the engine might have been dis-
covered, they failed to exercise ordinary care to avoid the collision.

2. RAILROADS—*Lookout—Fireman "hooking" fire.*—The fact that a fire-
man, in the regular discharge of his duties, is engaged in "hooking"
his fire while the engine is in motion on one of its trips is not an
act of negligence.

3. RAILROADS—*Public Crossing—Look and Listen—Contributory Negli-
gence.*—It is the duty of one about to cross a railroad track at a
public crossing to listen and look in both directions from which a
train may approach. If he fails to do so and attempts to cross in
front of a rapidly moving train and is injured there can, ordinarily,
be no recovery. Trainmen have the right to assume that a traveller
will take these necessary precautions, and until it is, or in the ex-
ercise of ordinary care ought to be, discovered that he is in a place
of danger, and is not conscious of his peril, it is not negligence to
fail to stop the train.

Error to a judgment of the Circuit Court of Henry county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Scott & Staples, J. B. Smith, N. H. Hairston* and *Samuel A. Anderson,* for the plaintiff in error.

*Henry G. Mullins, Dillard & Lee* and *Wm. Gordon Robertson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The accident by which plaintiff's intestate, M. L. Brammer, came to his death occurred upon the track of the Norfolk & Western railroad, at the crossing of a public road, a few miles west of Martinsville. Near the crossing is a small bluff, on the right-hand of a traveller approaching the railroad from Smith's river. For a short distance this bluff cuts off a view of the railroad from a person going in the direction of Martinsville, and an engine coming from Martinsville is not visible to a person standing on the crossing, until it comes out of a cut to the south, or east of south. As soon as it leaves the cut the engine is visible for the entire intervening distance. A man standing in the county road, or sitting in a vehicle in the road 23 feet from the crossing, can see 800 feet towards the cut; at 20 feet from the crossing he can see 900 feet in that direction. At the cut there is a sharp curve, and a person walking in the road towards the railroad track can see an engine coming out of the cut towards him, before he reaches the bluff. Approaching

the railroad he comes in plain view of the track up to the mouth of the cut. The farthest point from the track at which a view of the cut (obstructed by the bluff) is fixed by the testimony at 23 feet. Between this point and the track the view of the cut is entirely unobstructed.

On the evening of the accident M. L. Brammer, a man in the possession of all of his faculties of sight and hearing, was approaching this crossing about six o'clock. There was nothing in the surroundings, save the bluff, to interrupt, or to interfere with the full exercise of his senses, either of sight or hearing. He was driving a two-horse covered wagon. The wagon sheet, according to the impression of one witness, was turned up a little on the sides. Whether it was turned up sufficiently to enable a person sitting in the wagon to see to the right or the left is not stated. When seen by the witness Brown, Brammer was sitting in the front of the wagon, but later at the crossing, at the time of the accident, he was not visible to other witnesses. According to one witness who saw the collision, and at the time was about fifteen feet above the crossing, as the wagon approached the railroad, no driver was visible. Her language is, "I saw a wagon coming, but did not see anybody driving. I saw it when it struck it." She could see into the front of the wagon, but could see no one at all, and did not see Brammer until he was knocked out by the collision. Another witness was in fifteen steps of the wagon when the accident happened. He saw no one driving it. He was coming along behind the wagon, and as a matter of course did not enjoy the same advantage of position for seeing the driver of the wagon as did one standing in front of it.

It was plain that the driver of the wagon was either sitting far back in his wagon, or was lying down. Wherever he may have been, he was not sitting on the front end of his wagon where he would be visible to observers and best able to take such notice

of his surroundings as would enable him to take proper pre-
cautions for his own safety. Approaching the crossing, Bram-
mer did not stop. The witness who was following the wagon
says that when he heard the whistle of the engine blow, he
thought "the wagon would stop right there for the train to pass,
and he would overtake it, but he did not make any check at all,
but kept straight on," and in a minute after the whistle blew the
engine came out of the cut. The witness "still thought that
the driver would see the engine and stop, but he did not make
any stop at all—he just kept right on."

It is clearly shown by the evidence that if Brammer had
been looking he could have seen the engine at a distance of 280
or 300 yards when he was within 20 or 25 feet of the track.
There is positive evidence that the engineer blew the whistle
for the crossing. There is much negative evidence that it was
not blown. We will not undertake to determine this question,
but will for the purpose of this case assume that it was not
blown, and that in the failure to blow it the railroad company
was guilty of negligence.

There is evidence to show that the engine, to which no cars
were attached was running down grade by force of gravity, at
a rapid rate of speed. There is no evidence, however, to show
that its speed was such as to constitute negligence *per se*. The
only negligence of which the railroad company may be said to
have been guilty consists in its failure to sound the whistle,
as we have assumed to be the case.

But this negligence was not the proximate cause of the injury,
because it was none the less the duty of Brammer, upon ap-
proaching the railroad, to look and listen—to take precautions,
in other words, for his own safety—and if he had done so, there
is no doubt that he would both have heard and seen the engine
in time to stop and thereby have avoided the accident. The

real question upon which this case turns is, the plaintiff him-
self being negligent in his approach to the railroad, could the
defendant by the exercise of ordinary care, after his danger was
known, or ought to have been known, have avoided the conse-
quences of that negligence?

After the evidence was all submitted to the jury, the de-
fendant demurred, and the jury having found a verdict subject
to the demurrer to the evidence, the Circuit Court entered judg-
ment for the defendant. The case is therefore before us upon
a well recognized rule of law, which has been stated so fre-
quently that it is unnecessary now to do more than advert to it.
Considered in obedience to that rule, we are of opinion that the
judgment of the Circuit Court is plainly right.

It may be well to cite some authorities as bearing upon the
reciprocal duties of the traveller and the railroad company at
a public crossing.

In the case of *Johnson* v. *C. & O. Ry. Co.,* 91 Va. 171, 21
S. E. 238, it is said, that "if the death was caused solely by the
negligence of the defendant, there can be no doubt of the right
of the plaintiff to recover damages therefor. If, however, the
proximate cause of death was his own negligence concurring
with the negligence of the defendant, there can be no recovery."
And further, that "by the use of his faculties, Johnson could
have clearly seen the train as it approached the crossing, and
the engineer could have seen him for the same distance after
he came within 15 or 20 feet of the track, if they were at their
posts and performing their duties." The negligence of the
employees of the defendant was no excuse for negligence on the
part of the plaintiff. The day was clear and still; his sight
was unimpaired; he could hear the rumbling of the train. "There
were reciprocal duties imposed upon him. He could not go
on the railroad, even at a public crossing without exercising
ordinary care and caution. The track was a proclamation of

danger. It was his duty, before going on it, to use both eyes and ears. He should have listened and looked in either direction from which a train could come. If he had done so, he could not have failed to hear and see the approaching train, and be made sensible of the danger of going on the track. It was in plain view. If he failed to look and listen, as duty required of him, and attempted to cross the track in front of a rapidly moving train, and was caught before he could get across, and was killed, his own act, his own negligence so contributed to the injury that a recovery therefor cannot be sustained."

These remarks are applicable to the facts of the case under consideration, and are supported by a line of decisions. See *Lacy's case,* 94 Va. 475, 26 S. E. 834.

In *Martin* v. *R. F. & P. R. R. Co.,* 101 Va. 406, 44 S. E. 695, the rule is stated as follows: "A plaintiff seeking to recover damages for an injury caused by the negligence of the defendant, must himself be free from negligence, and if it appears that his negligence has contributed as an efficient cause to the injury of which he complains, the court will not undertake to balance the negligence of the respective parties for the purpose of determining which was most at fault. The law recognizes no gradations of fault in such cases, and where both parties have been guilty of negligence, as a general rule, there can be no recovery. There is really no distinction between negligence in the plaintiff and negligence in the defendant, except that the negligence of the former is called contributory negligence."

It is true, however, that "a defendant company may be liable for injury inflicted on the plaintiff, notwithstanding the latter's contributory negligence, if by the exercise of reasonable care it could have discovered and avoided the injury." *Rogers' case,* 100 Va. 325, 41 S. E. 732; *Joyner's case,* 92 Va. 354, 23 S. E. 773.

"If at a public crossing where a party is injured by a railroad train, the agents in charge of such moving train saw the party in a position of danger, or by the use of diligence might have seen him, and failed to exercise proper care and due diligence to stop the train and prevent it from striking him, it is liable." *Few's case,* 94 Va. 82, 26 S. E. 406.

This principle is well established and needs no further citation of authority.

Coming now to the facts as bearing upon this aspect of the case, it is true that while Brammer could see the engine the trainmen could likewise have seen Brammer. They saw the driver of a wagon approaching the track. The trainmen had a right to assume that Brammer would, in the discharge of his duty, take reasonable precautions for his own safety; that he would approach the railroad with his team under control (*Lacy's case, supra*), and that he would look and listen before undertaking to cross the track. It was only after it came to the knowledge of the trainmen, or by the exercise of ordinary diligence in the performance of duty upon their part should have come to their knowledge, that Brammer, disregarding his duty and oblivious of his danger, was in a position of danger, that the duty devolved upon the agents of the company to stop the train.

It appears that as the engine emerged from the cut the fireman was engaged in "hooking" his fire. This was in the regular line of his duty, and it cannot be considered an act of negligence. *L. & N. R. Co.* v. *Creighton* (Ky), 15 A. & E. R. R. Cas. 716, 50 S. W. 227. As soon as the fireman had performed the duty about which he was engaged, he looked up and saw the wagon approaching the crossing. He called to the engineer, who put on his emergency brake at once. The fireman saw no driver, and in this respect corroborates the testimony of other witnesses, who were near the scene of the accident, but saw no driver until he was thrown from the wagon by the force of the collision.

When the fireman saw the horses, their feet were just about on the track, and they were in a fast walk. The engineman saw no one until the fireman called out, and his testimony is that he did all that he could to stop the engine; that his eye was on the track all the way from the cut; that there was a steep down grade to the crossing, and he could not see any one coming from the left on account of a curvature in the track; that the engine was running without steam and by gravity alone.

To sum up the case briefly, it appears that the railroad company was guilty of negligence in failing to sound its whistle, but that this omission was not the proximate cause of the accident, since the plaintiff in error's intestate, had he taken the precautions which the law imposed upon him, could have heard and seen the approaching train. In other words, the evidence establishes beyond doubt that Brammer was guilty of contributory negligence. Considering the case from that point, it then became incumbent upon the plaintiff in error to show that after the position of danger, in which the contributory negligence of Brammer had placed him, was known to the defendant in error, or in the exercise of reasonable diligence in the performance of its duties should have been known to it, it omitted to do something which might have saved him from the consequences of his own imprudence. The evidence wholly fails to prove any such omission.

In what we have said we have attempted little more than to abridge the very excellent opinion of the Circuit Judge, but we think we have said enough to show that there is no error in the judgment complained of, which is affirmed.

*Affirmed.*