# Richmond.

Stokes' Administratrix v. Southern Railway Company.

January 18, 1906.

Absent, Cardwell, J.

104  817
f106  417

104  817
107  729
107  742

104  817
109  300

1. EVIDENCE—*Admissibility—Speed of Trains—Improper Test.*—In order to show the speed at which a passenger train was running which collided with a wagon and team at a public crossing, causing the injury complained of, or the distance at which an approaching train could be seen from the public road by one in a wagon, or the time required by an ordinary team to pass over the track, it is not admissible to introduce the observations of a witness made more than thirty years before of a wagon and team going over the same crossing in front of a freight train, nor to prove the time it required a different wagon and team to go over the same crossing, nor to show the speed of another train going over the same crossing in the opposite direction.

2. NEW TRIAL—*Exclusion of Evidence—When Harmless.*—The judgment of a trial court will not be reversed for refusing to permit a witness to answer a question where it is clear that the witness did not have the requisite knowledge of the subject about which he was being interrogated, and the interrogator was not prejudiced by the action of the trial court.

3. RAILROADS—*Grade Crossing—Duty of Traveller—Look and Listen—Case at Bar.*—It is the duty of one about to cross a railroad at grade to look and listen for approaching trains before going on the track ,and to do so when and where his listening will be reasonably effective. The track itself is a proclamation of danger. In the case at bar, the evidence discloses such contributory negligence on the part of the plaintiff's intestate, who was killed by a collision with a train at a grade crossing, as bars the plaintiff's right of recovery.

Error to a judgment of the Circuit Court of Lunenburg county, in an action of trespass on the case. Judgment on demurrer to the evidence for the defendant. Plaintiff assigns error.

*Affirmed.*

This was an action to recover for the death of the plaintiff's intestate, occasioned by a collision at a grade crossing with a passenger train of the defendant company. The plaintiff's intestate was driving a two-horse wagon down a road. It was claimed, among other things, that the view of the crossing was obstructed by weeds and bushes, and that the train which inflicted the injury was running at a rate of speed much higher than usual. It became important to show at what distance the train could be seen from the highway, and how long it would take for the train to travel from the point at which it could be first seen to the public crossing. Plaintiff undertook to establish these facts by different witnesses. One witness, Eddie Owen, after testifying to the relative position of the railroad and the public highway, and as to other matters connected more or less immediately with the case, was asked a question which was permitted to be answered. The question and answer are as follows:

"Have you even seen a two-horse wagon on that crossing, or the feet of the horses on that crossing, going across the track and a train just coming out of the cut at the same time—the first that he could see it?

"Not right on the crossing, but a little ways from the crossing, I saw a wagon once—I think about '72—Mr. Jones—William Jones, of Mecklenburg, was driving, and I think he was within about as far as from here to that gate (refers to gate in railing surrounding the bar), about three yards of the crossing, and I motioned to him to stop; I was standing on the west of the bank, on the dirt road. I used to own that land there. I saw a freight train coming out of the mouth of the cut as he

was approaching the crossing from the south, and I tried to stop him; he didn't seem to understand me at all, but he finally looked down and then slashed his mules—the wagon had a body may be 16 feet long, and a pair of mules attached to it; three negroes were in the wagon and two empty hogsheads; he slashed his mules and had just about cleared the track when the engine struck the end of the wagon body."

Subsequently, on motion of the defendant company, this evidence was stricken out and the plaintiff excepted. This constitutes the plaintiff's second exception referred to in the opinion of the court.

The fourth and fifth bills of exception are as follows:

"Be it remembered: That on the trial of this cause, all the proceedings being had, as set forth in the previous bill of exception, and which is hereby made a part of this exception, and the following witnesses having testified (here insert the testimony of G (J) Walter Davis, Eddie Owen, George Owen, J. A. Shackleton, Junius Glenn, Richard Bell, Sam Pollard, Emmet Lash, George Fowlkes, Harry Stokes, George McCormick, William Neal, Caroline Rowlitt, Charles Egleston, Rose Hudson, Jim Doswell, J. M. Grymes, Mrs. C. L. Stokes, Bernard Shackleton, & W. R. Borum, in behalf of the plaintiff, the plaintiff introduced H. M. Allen to further maintain the cause in her behalf, and asked the said H. M. Allen the following question: 'Mr. Allen, were you ever present at the railroad crossing at which Mr. Ham (W. H.) Stokes was killed, when an ordinary two-horse wagon was placed on one side of the track, with the heads of the horses over the rails, and the said wagon driven across the track until it was out of danger on the other side, and the time that that wagon took to pass from one point to the other was timed?'

"To which the witness answered: 'Yes, sir.'

"Whereupon the plaintiff, by counsel, asked the witness, 'What was the time?' expecting the witness to answer 19 seconds as is also shown by the examination of the witness as to what his evidence would be, after the jury had retired.

"Which examination is here made a part of this exception, taken from the record testimony and which answer was material in plaintiff's behalf.

"Whereupon the defendant, by counsel, objected to all testimony made with the wagon in question.

"Which objection the court sustained. To which action of the court in sustaining the said exception, and in refusing to permit the witness to answer said question, and to testify as to any experiment made with the said wagon, the plaintiff, by counsel, excepts, and prays that this, her 4th bill of exception may be signed, sealed and enrolled and made a part of the record in this cause, which is accordingly done.

"Geo. J. Hundley.     (Seal.)"

"Be it remembered:    That on the trial of this cause, all the proceedings being had, as set forth in the previous bill of exceptions, which are made a part of this bill of exception, and all the witnesses having testified in chief, and the defendant having introduced all his testimony (here insert testimony of witnesses down to Love), the plaintiff introduced the said J. D. Love in rebuttal as to the speed of the train which killed W. H. Stokes; when the said Love was asked the following questions. (Here insert testimony of said Love.)

"Whereupon the court, on the motion of the defendant, by counsel, ruled as follows:

"I (the court) strike it out, all the evidence of the witness as to speed, not applied to this particular train.

"To which ruling of the court in striking out said evidence, the plaintiff, by counsel, excepts, and prays that this, her fifth bill of exceptions may be signed, sealed and enrolled and made a part of the record in this cause, which is accordingly done.

"Geo. J. Hundley.     (Seal.)"

The other facts sufficiently appear in the opinion of the court.

*G. S. Wing,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action to recover damages for the alleged negligent killing of the plaintiff's intestate by the Southern Railway Company.

Upon the trial of the cause, the defendant company demurred to the evidence. Its demurrer was sustained, and a judgment rendered in its favor. To that judgment this writ of error was awarded.

It appears that about five o'clock on the 22nd day of August, 1903, a southbound passenger train of the defendant company ran upon the plaintiff's intestate, W. H. Stokes, who was crossing its track at a highway grade crossing near Meherrin, in the county of Lunenburg, in a two-horse wagon loaded with wheat, killing him and his two mules, and destroying his wagon.

The contention of the plaintiff is that the proximate cause of the accident was the failure of the defendant to cause the whistle on its engine to be blown for the crossing, as required by statute, and the running of its train, which was behind time, at an unusually rapid rate of speed.

The defendant claims that the crossing signal was blown, and that the train was not running in excess of forty miles an hour, its schedule rate; and insists that even if it was guilty of negligence in the management of its train, the proximate cause of the accident was the failure of the decedent to exercise due care before going upon its track.

The plaintiff took five bills of exceptions to the action of the court in refusing to permit her to introduce certain evidence, all of which, except the first, are relied on here as grounds for reversing the judgment complained of.

The assignments of error based upon bills of exception two, four and five, are without merit. The evidence objected to was clearly inadmissnble. One related to the crossing of a wagon in front of a freight train more than thirty years before; another to the time it required a different wagon and team to go over the track of the defendant at the crossing; and the third to the speed of another train going in the opposite direction.

It appears from bill of exception No. 3 that the plaintiff wished to ask Eddie Owen, one of her witnesses, if he knew the condition of the defendant's right of way at the crossing five hours after the accident occurred, stating that she expected to prove by the witness that the view from the crossing was obstructed by undergrowth on the right of way. The court refused to allow the question to be asked.

Whether or not the defendant's right of way at or near the crossing had upon it undergrowth which would have prevented the plaintiff's intestate from seeing the approach of the train which caused his death, was a material question. The trial court so thought, as it permitted both the plaintiff and defendant to introduce witnesses to prove the condition of the right of way at that point prior and subsequent to the accident. The bill of exception discloses no reason why the court declined to permit the question we are now considering to be asked; but another bill of exception, to which it refers, shows that the witness had already stated that he did not know the conditions of the right of way at the time of the accident, and that when he went there five hours afterwards (the accident occurred about five o'clock P. M.) it was dark.

While it would have been better to have permitted the question to be asked, no prejudice resulted to the plaintiff from the court's action, since it is clear from what the witness had already testified that he did not know what the condition of the right of way was at the time designated in the question.

This brings us to consideration of the case upon the demurrer to the evidence.

In the view we take of the case, it is unnecessary to determine whether or not the defendant was guilty of negligence in the management of its train as charged in the declaration. · For if it was, the proximate cause of the accident, as shown by the evidence, was the contributory negligence of the plaintiff's intestate.

The crossing is a dangerous one, and Mr. Stokes, who lived in the neighborhood and was on his way to mill, knew this. The county road crosses the railway track a little obliquely, in a cut which extends some distance both north and south of the crossing. The bank or side of the cut, which is about twenty-five feet from the centre of the railway track, at the point where the highway crosses the railway was originally about seven feet deep. Five or six years prior to the accident it had been cut down or lowered about two feet by the defendant, for a distance of about sixty-five feet along the highway and about seventy-five along the railway in the direction from which the train came. There were only three eye-witnesses to the accident. A boy about twelve years of age, a witness for the plaintiff, who was riding in the wagon with Mr. Stokes, testified that when they reached a point in the highway about two hundred feet from the crossing, "I told him I thought that I heard a roaring, and he stopped and just as he started off he said the train was going the other way, and we drove off down to the crossing and just as the mules' front feet got over the rail the train was right there. Then he commenced to whip the mules to get across and I jumped off." The witness further testified that he was sitting on the seat in the wagon with Mr. Stokes and on his right side.

The engineer in charge of the locomotive, who was introduced by the defendant testified that as his train approached the crossing "a short distance south of Meherrin, when I got within about 100 yards or 150 yards . . . I saw a mule team— two-horse wagon with two mules to it, being driven by a white gentleman—I did not know who he was—sitting in the wagon

driving them.   He looked at me.   I saw him and I commenced blowing the steam whistle  .  .  .   and he commenced whipping his team up to cross over ahead of me; consequently he got his mules just about across the track and the fore wheels of the wagon were just pulling up on the rail when the engine struck him."   The engineer further testified that he put on the emergency brakes and did everything he could to stop the train; that when he first saw the mules they were about twenty-five or thirty feet from the track.

The other eye-witness, also put on the stand by the defendant, was a girl who was sitting at a window in a house about eighty yards from and in full view of the crossing as Mr. Stokes approached it.   She testified that when she first saw the wagon it was about thirty-five steps from the crossing, a little back of where the "cut-off" was; that he was whipping his team when she first saw him, and at that time she had heard the rattle of the train and "seen the smoke from it."

An approaching train could not be seen from the point two hundred feet from the railway track where Mr. Stokes stopped his wagon, nor could it be seen until he reached the "cut off," sixty-five feet from the crossing, at which point he could see along the railway seventy-five feet.

The defendant's evidence shows by actual measurements made, and views taken, sometime after the accident, that an approaching train could be seen 287 feet, when within fifty feet of the crossing; 665 feet, when within thirty-two feet of it; and 1528 feet when within twenty-five feet.   But the plaintiff's evidence tends to show, that on account of weeds and small undergrowth growing on the "cut-off" at the time of the accident, an approaching train could not be seen more than seventy-five feet from the crossing until a point thirty feet from it was reached, when an approaching train could be seen a short distance—how far is not shown.

The uncontradicted evidence of the engineer is that when within 100 or 150 yards of the crossing he saw Mr. Stokes

and his team when the mules were about 25 or 30 feet from the track, and that Mr. Stokes looked at or toward him. If Mr. Stokes saw the approaching train as the engineer testifies, then it was clearly his duty to have kept off the railway track. If he did not see the approaching train, he could have seen it if he had been in the exercise of due care. The track itself was a proclamation of danger, and it was his duty, before going upon it, to use his eyes and ears—to look and listen—and to do so when and where his looking and listening would be reasonably effective. *Johnson* v. *C. & O. Ry. Co.*, 91 Va. 171, 21 S. E. 238; *Washington, &c., Ry. Co.* v. *Lacey*, 99 Va. 460, 475-6, 26 S. E. 834; 2 Shear. & Red. on Neg., §§ 476, 478. He had no right to conclude, as he seems to have done, that the "roaring" heard two hundred feet away from the track was made by a train going away from instead of coming toward the crossing. He had crossed the railway track more than a mile from and north of the crossing, and had traveled along the highway, the general direction of which was parallel with the railway and not far from it. It is not pretended that any train passed either way during that time. Having been warned by the "roaring" of a train, which he had no right to believe had passed, he ought to have been the more careful before going upon the track.

The little boy sitting in the wagon by Mr. Stokes testified that as the wagon approached the track from the point where they halted he looked and listened—in what direction he looked he does not state. He was sitting on the seat on the side farthest from the train. His size, his position and the direction the wagon was moving prevented him from seeing the train until it was right upon them, unless he leaned forward or backward so as to look around Mr. Stokes. It is not shown that he did this.

We are of opinion that the Circuit Court did not err in sustaining the defendant's demurrer to the evidence, and the judgment must be affirmed.

*Affirmed.*