# Richmond.

SMITH'S ADMINISTRATOR v. NORFOLK & WESTERN RAILWAY CO.

January 16, 1908.

Absent, Keith, P.

1. RAILROADS—*Grade-Crossing—Duty of Traveller.*—It is the duty of a traveller about to cross a railroad at grade to approach the crossing carefully, and to look and listen for approaching trains in both directions from which trains may come. Not only so, but his looking and listening should be done at a time and place to render them reasonably effective. If he fails to do so and is injured by a passing train he cannot recover of the railroad company, although its servants have negligently failed to give the crossing signal required by law, unless its negligence is the sole proximate cause of his injury. The vigilance of the traveller to escape injury is commensurate with that of the railroad company to avoid the infliction of injury.

2. NEGLIGENCE—*Contributory Negligence.*—If the proximate cause of an injury is the negligence of both plaintiff and defendant concurring at the time of the injury, there can, as a general rule, be no recovery. The law recognizes no gradations of fault in such cases.

3. RAILROADS—*Grade-Crossing—Approaching in Vehicle—Speed.*—A party approaching a railroad track in a vehicle must not approach at such rate of speed as that when he reaches a point where he can see or hear a train it is too late to make adequate use of such opportunity for looking and listening as the surroundings of the crossing will admit.

4. NEGLIGENCE—*Self-Imposed Emergency.*—The principle that a person in an emergency or great peril is not required to exercise the care required of prudent persons under ordinary circumstances has no application except in cases where the plaintiff has been placed in a situation of danger by the negligence of the defendant, not united with his own negligence. No such allowance is made in favor of one whose own fault has brought him into the peril which disturbs his judgment.

Error to a judgment of the Circuit Court of Franklin county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Samuel A. Anderson, L. W. Anderson* and *W. L. Lee,* for the plaintiff in error.

*Dillard & Dillard, Theodore W. Reath,* and *Robertson & Wingfield,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the administrator of J. J. Smith, deceased, to recover of the defendant railway company damages for its alleged negligence in causing the death of the plaintiff's intestate. There was a demurrer to the plaintiff's evidence, which the circuit court sustained. This judgment we are asked to review and reverse.

The plaintiff's intestate was killed at a public road crossing, in the county of Franklin, at a point a little south of Prillaman's Siding. The crossing is shown to be a dangerous one, the view of the railroad to one approaching the track from the north being cut off on the traveller's right by a bluff until he is within a short distance of the track. The public road descends until within a short distance of the track, and then rises until the track is reached.

The intestate was driving a wagon, drawn by a pair of mules, and had almost cleared the track, when he was struck by a regularly scheduled freight train, which was behind time. This train ran regularly from Roanoke in a southerly direction, stopping at Prillaman's Siding when flagged. The intestate is shown to have been an experienced and careful driver, familiar with

the crossing, and the running of trains at that point. He had been hauling over the crossing for some time, the stave factory at Prillaman's Siding being his point of delivery. On the morning of the accident, the deceased was at Prillaman's Siding in conversation with two others a few moments before he was killed. It is but a few hundred yards on the arc of a circle from "Prillaman's" to the crossing, the public road runing this distance around a bluff which cuts off a view of the railroad, the traveller, however, being at no time on the route more than 130 feet distant from the railroad. When a man driving a two-horse wagon reaches a point in the public road, from which, looking up the track to his right, he can see the same for a distance of seventy yards, the heads of his team would be about three feet from the edge of the cross-ties; going a little further so that the driver could see as much as 180 yards up the track, the heads of the team would be "right on the rail." The distance traveled by the mules from the point where they first emerged from the embankment to the point at which they were when the wagon was struck by the train, was fifty-two feet.

The only eye-witnesses of the accident were the engineer and the fireman. Their uncontradicted evidence is that the deceased approached the crossing standing up, whip in one hand and lines in the other, with the team in a run or gallop. The evidence shows that these employees of the railroad saw the deceased as soon as it was possible for them to do so, that the emergency brakes were immediately applied, and everything possible done to avert the accident, but without avail; and that for some distance before reaching the crossing it was downgrade and the train running twenty-five to thirty-five miles per hour. A number of witnesses testify to hearing the whistle blow for Prillaman's Siding, and the noise of the approaching train. The demurrer to the evidence, however, admits that the crossing whistle was not blown, and the act approved January

18, 1904 (Va. Code, 1904, sec. 1294d) was not complied with. This act had been in force but twenty-five days when the accident happened, on the morning of February 13, 1904; and provides that, where the railroad crosses upon the same level any highway or crossing, the bell shall be rung or whistle sounded continuously or alternately for a distance of not less than 300 yards until the engine has reached such highway crossing.

The negligence of the defendant company in approaching the crossing must be accepted as an established fact; but this negligence does not relieve the traveler on the public highway from vigilance on his part. The duty of such a traveler is to exercise a diligent and watchful care for his own safety. This duty on his part is as imperative as that of the railroad company to look out for him, and to use reasonable care and precaution to avoid injury to his person or his property at a point of possible collision. The vigilance of the traveler to escape injury is commensurate with that of the railroad company to avoid the infliction of injury. When the use of his faculties would apprise the traveler of impending or approaching danger, he must exercise those faculties or suffer the consequences. The greater the danger at a particular crossing, the greater the vigilance required of both. Before crossing a railroad, the traveler on the public highway must use his sense of sight and hearing. He must approach the crossing carefully, and must look in every direction that the rails run to make sure that the crossing is safe; and his failure to do so will, as a general rule, be deemed negligence. Moreover, since the track is a proclamation of danger to the traveler, he must not only use his eyes and ears, looking and listening in both directions, but he must make the acts of looking and listening reasonably effective. If a traveler is warned, or by the exercise of care commensurate with the known danger would be warned of the near approach of a railroad train, then it is his duty to keep off the track until it has passed;

and to go on the track under such circumstances is negligence, and defeats recovery for injuries inflicted in the resulting collision.    Since the negligence of the defendant company does not excuse the non-performance of the traveler's reciprocal duties, it follows that this negligence does not entitle the plaintiff to recover unless it was the sole proximate cause of his injury.

A traveler at a crossing has the right to presume that the company will obey the statute and sound the signal required by law, and to rely on this presumption; but such reliance does not relieve him from care on his part.

These principles, touching the law governing the relative rights of the public and railroad companies at highway crossings, are settled by numerous decisions of this court.    *Johnson v. C. & O. Ry. Co.,* 91 Va. 171, 21 S. E. 238; *B. & O. R. Co. v. Few's Ex'or,* 94 Va. 82, 26 S. E. 406; *W. S. Ry. Co. v. Lacey,* 94 Va. 460, 26 S. E. 834; *Southern Ry. Co. v. Bryant,* 95 Va. 212, 28 S. E. 183; *A. & D. Ry. Co. v. Reiger,* 95 Va. 418, 28 S. E. 590; *Brammer v. N. & W. Ry. Co.,* 104 Va. 50, 51 S. E. 211; *Stokes v. So. Ry. Co.,* 104 Va. 817, 52 S. E. 855; *So. Ry. Co. v. Jones,* 106 Va. 412, 56 S. E. 155.

In the light of the principles settled by these decisions, we are of opinion that the plaintiff's intestate was negligent in his approach to the crossing in question—so negligent and lacking in care for his safety as to preclude his right to recover, notwithstanding the negligence of the defendant company in failing to sound the warnings required by law.    The law recognizes no gradations of fault in such cases, and where both parties have been guilty of negligence, as a general rule, there can be no recovery.    There is really no distinction between negligence in the plaintiff and negligence in the defendant, except that the negligence of the former is called contributory negligence. *Richmond Traction Co. v. Martin's Admr.,* 102 Va. 209, 45 S. E. 886.

According to the testimony of the engineer and the fireman, who were the only witnesses of the accident, the deceased came upon the crossing standing up, whip in hand, with his team in a run or gallop. The inevitable conclusion from the statement of these witnesses is that the deceased must have come around the bluff in a trot or run, in an effort to get across the track in advance of the approaching train; for, if he had been approaching cautiously and in a walk, and as soon as he came in sight of the train, formed for the first time the purpose to cross the track, he did not have sufficient distance from the point of initial vision to the track of the railroad within which to get his mules into a run. When the deceased reached that point in the public road where he could see 70 yards up the railroad, the heads of his team were in three feet of the track. The physical facts in the case, coupled with the uncontradicted evidence of the engineer and fireman, show that the deceased could not have approached the crossing cautiously with his mules in a walk and under control, for it is manifest that if he had approached the crossing in this manner he would have been unable to get his mules on the rails in a run after his first possible view of the train. The distance in which he had to act did not admit of this.

The conclusion is irresistible, that, when far enough from the crossing for safety, the deceased was moving in a trot or speedy gait, which was lashed into a run as the mules reached the rails, with the hope of crossing the track ahead of the approaching train. This manner of approaching a dangerous crossing was thoughtless negligence, and was the proximate cause which cost the deceased his life. As already seen, the engineer and fireman saw the plaintiff's intestate approaching and on the track as soon as it was possible to do so, and did all that was possible to avert the accident, but it was too late for them to avoid the collision.

A party approaching a railroad track must not approach at

such a rate of speed as that when he reaches a point where he can see or hear a train it is too late to stop the team and protect himself from injury. *Lacey's Case, supra.*

It is insisted that the deceased was lulled into security by the failure of the defendant company to give the required warnings as it approached the crossing; and in support of this contention two cases are relied on—*Kimball & Fink* v. *Friend,* 95 Va. 125, 27 S. E. 901 and *Railway Co.* v. *Aldridge,* 101 Va. 142, 43 S. E. 333. In both of these cases there was a local agency of the railroad company for warning travelers on the public highway of an approaching train, which was out of order and out of place. In *Friend's Case* it was a gong, and in *Aldridge's Case* it was a watchman. These agencies of notification, immediately on the ground, upon which the traveler had the right to rely, were silent, thus lulling him into a dangerous position from which he could not extricate himself. But we are aware of no Virginia case which holds, that a traveler on the highway may approach a railroad crossing at such speed, if he is driving a team, as will not allow him to make adequate use of such opportunities for looking and listening as the surroundings of the crossing will admit.

The principle is invoked, on behalf of plaintiff in error, that a person in an emergency or great peril is not required to exercise the prudence required of prudent persons under ordinary circumstances. This principle does not apply except in cases where the plaintiff has been placed in the situation of danger by the negligence of the defendant, not united with his own negligence. *Southwest Imp. Co.* v. *Smith's Admr.,* 85 Va. 306, 7 S. E. 365, 17 Am. St. Rep. 59. "No such allowance is made in favor of one whose own fault has brought him into the peril which disturbs his judgment." Shear. & Red. on Neg., Vol. p. 133, sec. 89.

It is a necessary conclusion from the evidence proper to be considered on the demurrer to the evidence, that the plaintiff's

intestate was guilty of contributory negligence, and that the defendant could not have saved him from the result. The demurrer was therefore properly sustained, and the judgment of the circuit court must be affirmed.

*Affirmed.*