# CHARLESTON.

G. W. JONES v. WALKER D. HINES, DIRECTOR GENERAL
OF RAILROADS.

Submitted February 3, 1920.   Decided February 10, 1920.

1. BAILMENT—*Bailee in Possession May Sue for Injury to Property.*

    A bailee having the actual possession of animals may maintain an action to recover damages for wrongfully killing or injuring them. (p. 498).

2. RAILROADS—*Driving Cattle on Track Without Looking or Listening Constitutes Negligence Precluding Recovery.*

    Where one in charge of cattle conducts them across a railroad track at a crossing, without looking or listening for the approach of trains, and some of the cattle are struck and injured by a train moving on said railroad, his negligence in so conducting them upon the crossing without looking or listening for the approach of the train will preclude the recovery of damages for the injury, although the servants of the railroad may have been negligent in failing to ring the bell or blow the whistle before reaching the crossing, unless it appears that those in charge of the train could have stopped the same in time to have prevented the injury after discovering that the cattle were in a position of danger, or after such discovery should have been made by the exercise of the lookout required of those in charge of locomotives when approaching crossings. (p. 498).

Error to Circuit Court, Mercer County.

Action by G. W. Jones against Walker D. Hines, Director
85 W. Va.

General of Railroads.  Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Reynolds & Reynolds,* for plaintiff in error.

RITZ, JUDGE:

In this case, brought to recover for the alleged negligent killing of two cows by coming into collision with a train operated by the defendant over the line of the Norfolk and Western Railway Company, the plaintiff obtained judgment in the circuit court for the value of both of the animals, amounting to the sum of $180.00, to review which this writ of error is prosecuted.

The plaintiff lived upon a farm just east of the City of Bluefield owned by one W. F. Beckett.  The Norfolk and Western Railway Company runs through this farm dividing it into two parts.  The residence occupied by the plaintiff is on the south side of the railway company's tracks, while a pasture which the plaintiff used for grazing his stock lay on the north side thereof.  This pasture field was reached by a road extending from the residence occupied by the plaintiff across the tracks of the railway company.  At the point at which this road crossed the railroad the tracks of the same were at a considerable height above the bed of a small stream flowing east just to the south of the railway.  This road came down this stream and ascended the bank to the level of the tracks of the railway through a considerable cut.  At this point the railway tracks were likewise in a cut, so that a train approaching the crossing from the west could not be seen by anyone using the private road until he reached a point about forty feet from the tracks, where the road reached the same level as the railway road bed.  When this point was reached the tracks were visible for a considerable distance in either direction.  It likewise appears that an engineer on an east-bound train would not have a view of anyone using the road until such person came within a distance of about forty or fifty feet from the tracks.  On the morning of the occurrence which resulted in the killing of the two cows for which this suit was brought the animals were being driven from the plaintiff's residence on the south side of the track to

the pasture field on the north side thereof. It is shown by the plaintiff's wife that during this time trains passed over this crossing at very frequent intervals, her statement being that one passed every fifteen minutes. Because of this fact it was the custom of the plaintiff in driving the cattle to the pasture field to have them accompanied by someone in front, as well as another person behind, so that when the railroad crossing was reached, if there was a train in view, the party in front could stop the cattle and prevent their going upon the track until the train passed. On this occasion the plaintiff's wife and a hired man were conducting five cows and two horses to the pasture field, the plaintiff's wife going in front in order to protect them at the railroad crossing in case of danger from an approaching train, and the hired man driving the animals. Plaintiff's wife testifies that she did not see the train approaching from the west until she was almost upon the track, and that when she did see it, it was within forty or fifty feet of her, and that she only escaped by hurrying across the track in front of the train, leaving the cattle unprotected, with the result that one of them got so close to the track that it was hit by the engine with such force that it was knocked against another one of the cows causing both of them to roll over the embankment, which is thirty-five or forty feet high. They were so injured in the accident that it was necessary to kill them.

The defendant insists that plaintiff is not entitled to the judgment rendered in his favor for both of the animals, for the reason that one of them did not belong to him. It appears from the evidence that one of the cows was owned by the plaintiff, and the other was owned by his landlord. It is shown that when plaintiff rented the farm there went with it all of the cattle and stock upon it, which included one of the cows that was killed, and he had this cow in his custody and possession under his contract at the time it was killed. It seems to be settled that a mere bailee of animals may maintain an action against one wrongfully killing or injuring them. 3 C. J. 159; 6 C. J. 1149; 3 R. C. L., Title, "Bailments," § 49. And this is true as to one who is an agistor of cattle. Story on Bailments, § 443.

The defendant also insists that the plaintiff cannot maintain

this suit because of the contributory negligence of his wife, in charge of the cattle, in allowing them to go upon the track, or to come in dangerous proximity thereto. It is claimed by the plaintiff that the engineer on the locomotive did not sound the whistle or ring the bell when approaching this crossing, and that the defendant was negligent in this regard. The defendant, however, says that whether or not it was negligence not to sound the whistle or ring the bell under the circumstances, the plaintiff was guilty of contributory negligence barring a recovery. As before stated, it appears from the plaintiff's testimony, which was all of the testimony introduced in the case, that one approaching the track from the south side could see a train approaching from the west for a considerable distance when within forty feet of the track. This fact appears without contradiction; in fact, it is the statement of plaintiff's wife who had charge of the cattle on this occasion. It is likewise shown by her that she did not see this train approaching until it was within forty or fifty feet of the crossing, at which time she was on the track, or practically upon it. Manifestly if she had looked when she was within forty or fifty feet of the track, or within twenty feet of the track, she would have seen this train approaching, and would have prevented the cattle from approaching nearer to the track than was safe. Why she did not look is not explained. She was preceding the cattle for the very purpose of protecting them against just such an occurrence as this. There is just as much duty upon one passing over a railroad crossing to exercise the faculties given him for his own protection as there is upon the railroad company to sound an alarm, or give warning of the approach of its train to such crossing, and it is very well established, both in this jurisdiction and elsewhere, that where one suffers injury at a crossing by going upon the same without looking or listening for the approach of trains, he can have no recovery, unless it appears that the injury could have been avoided by the railway company's servants after his peril was discovered, or could have been discovered by the exercise of the diligence required to be exercised by such servants when approaching a crossing. In this case it appears without contradiction that the person in charge of these cattle could have seen this train if she had but looked in ample time

to have prevented the cattle from reaching a place of danger. In fact, she was preceding the cattle along the road for the very purpose of protecting them against the danger which they encountered. Her conduct in approaching the railroad track without looking to see whether this train was coming until she was practically upon the rails was, under the circumstances, to say the least, negligent, and because of this negligence of the plaintiff's agent in charge of the cattle he is not entitled to recover, unless he has shown that after the perilous position of the cows was discovered, or could have been discovered, the defendant's agents in charge of the train could have stopped the same in time to avoid the accident. *Berkeley* v. *Railway Co.*, 43 W. Va. 11; *Riedel* v. *Traction Co.*, 63 W. Va. 522; *Bassford* v. *Railway Co.*, 70 W. Va. 280; *Stokes* v. *Railway Co.*, 104 Va. 817; *Smith* v. *Railway Co.*, 107 Va. 725; *Southern Railway Co.* v. *Hansbrough*, 107 Va. 733; *Chesapeake & Ohio Railway Co.* v. *Hall*, 109 Va. 296. There is no attempt to show that the peril to the cattle could have been discovered by the defendant's agents in time to have prevented the accident. In fact, there is no effort to show within what distance the particular train could have been stopped, or even approximately how far the engine was from the crossing when the danger to the cattle became imminent. Under these circumstances the circuit court should have directed a verdict for the defendant as requested.

It follows that the judgment of the circuit court will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded.*