Statement of the case.

Alabama & Vicksburg Railway Co. *v.* Jessie M. Stacy.

1. Railroads. *Flag-station. Accommodations for passengers.*
    . If at a flag-station the place is ordinarily safe and convenient for passengers to get on and off trains, the railroad company is not liable for failure to furnish special accommodations to keep them off the wet ground in time of much rain.

2. Same. *Flag-station. Passenger accommodations. Case.*
    A passenger train stopped at a flag-station where there were no passenger accommodations, but where it usually stopped at or somewhere near a public crossing. To allow a freight train to pass, the train went a little beyond the crossing, and a lady passenger, having a ticket to that place, reached the steps to alight, but found the ground overspread with water from excessive rains. She remarked to the conductor on the unsuitableness of the spot, to which he replied in an impatient manner, "No matter, it is the station." She did not demand to have the train backed or refuse to alight, but accepted his assistance and stepped off. Ordinarily, one place there was as convenient as another, and at this time the crossing, though not covered with water, was muddy and the ground everywhere wet. Much water could have been avoided by passing back through the sleeper, but this was not suggested. *Held*, she could not recover for injuries resulting from getting her feet wet.

From the circuit court of the first district of Hinds county. Hon. J. B. Chrisman, Judge.

On March 13, 1890, plaintiff, a lady, purchased a ticket from Brandon to Pearson, both on appellant's line. Pearson was a flag-station where there was no depot, and no platform or other accommodations for passengers, but trains stopped there as occasion required for passengers to get on and off, and a post-office was located there. Plaintiff lived near Pearson, and was familiar with the situation and surroundings. On arrival of the train at Pearson, she went with her little daughter to the front end of the car, carrying some bundles, and waited a short while for the conductor, who came and assisted her off. It was then raining slightly, and she testified that the ground was covered with water, and that she remonstrated with the conductor that this was not a proper place to put a lady off, when he replied that anywhere between the switches was the station, or something to that effect. She further

testified that his manner was rough, and that he was impatient, and that he left her standing in the water over her shoe-tops, through which she had to walk to reach a road crossing where passengers for that station generally got on and off. The ground at the crossing was above water, but it was muddy. There was evidence, however, tending to show that the edges of the public road which crossed there were elevated and covered with bermuda grass. By going out the back end of the car and through the sleeper, which was at the rear of the train, she could have gotten down upon the track, which was above water, and could have reached the crossing in that way; but it was difficult for a lady to get upon the track from the end of the car, and this was not suggested by the conductor. Plaintiff testified that it did not occur to her to go through the sleeper, as she considered it private, and did not suppose that she had the right to do that.

There was a conflict in the testimony as to whether the entire space between the tracks where plaintiff alighted was covered with water. The conductor testified that the ground was wet, but that she was not put off in the water, and that she could have stood where she was upon alighting until the train pulled out, or could have stepped across the water to the elevation next to the side track and could have walked to the crossing without getting in the water. After leaving the train, plaintiff went into a store near by and sat by a stove fifteen or twenty minutes, when her husband arrived and she went home with him in a buggy, a distance of a mile. Her feet were very wet and her clothing was damp. She endeavored to dry her feet at the store, but failed. There was testimony tending to show that, as the result of getting her feet wet, plaintiff's health was injured. She brought this suit against the railroad company to recover damages for the same. Other facts as found by the court from the record are stated in the opinion.

On the trial the court was asked to instruct the jury to find for defendant, and this was refused. In lieu of all others, the following instructions were given for plaintiff:—

" 9. The court instructs the jury for the plaintiff that it is the

duty of railroad companies carrying passengers for hire to provide reasonably safe and convenient places at their stations for their passengers to alight and to stop their trains at such places, and if the jury believe from the evidence that at Pearson station no such provision was made, or that if such provision was made the conductor stopped, not at such place but at a point beyond it, and there required the plaintiff, in a rude and impolite manner, against her protest and remonstrance, to get off the train where she was compelled to alight from it in the water and wade out, and, in doing so, that she suffered damage to her health, then she is entitled to recover damages of the defendant; and, in such case, the jury are not confined to actual, but may assess such punitive damages by way of punishment for negligence or wilfulness (if they believe the conductor acted wilfully and impolitely) as they think just and proper to be awarded in the case.

"10. The court instructs the jury that the words *compelled* or *coerced* mean driven, not necessarily by physical force or violence, but also mean forced by moral restraint."

Verdict and judgment in favor of plaintiff for $225. A motion was made for a new trial, which was overruled.

Defendant appeals.

*W. L. Nugent,* for appellant.

1. The court should have instructed the jury to find for defendant. Plaintiff's allegations were fully met by the proof. The train stopped at the usual place. Plaintiff could have gone through the sleeper and gotten off at the crossing. She was under no constraint to get off in the water. If she had alighted on the crossing, she would have been in the mud. Passengers must inform themselves concerning the incidents of railway travel. *Ry. Co.* v. *Mackey,* 27 Barb. 528 ; 6 Am. & Eng. R. R. Cas. 130 ; 12 Ib. 165 ; 26 Ill. 373.

If plaintiff had insisted upon being put off at the crossing, the result would have been the same. Law Rep. 3 Exch. 150 ; 4 Ib. 117. See also 33 Pa. St. 318 ; Patterson's Ry. Ac. L. §§ 270, 293 ;

Beach on Con. Neg. § 172 ; Thompson on Carriers of Pass. § 566 ; 4 Col. 344 ; 44 Miss. 466.

Pearson was a mere flag-station, with no accommodations for passengers, and no ticket office ; all of which was known to plaintiff. Defendant could not be held to the same accountability as at a regular station.    35 Am. & Eng. R. R. Cas. 529.

2. The court erred in overruling the motion for a new trial. The jury found contrary to the law and the evidence.   There was no compelling or coercion as indicated in plaintiff's instruction.   The jury failed to observe the instructions given for defendant.  If they had been followed, a verdict for plaintiff would have been impossible.

Plaintiff debarked of her own volition.   She did not ask the conductor to back the train ; did not seek to go through the sleeper ; nor did she even attempt to get off on the north side of the track. She could have remained standing a moment until the train had passed.  Then she could have stepped upon the cross-ties and walked on the track ; but, with her baskets, she preferred to walk through the water, incurring, as she said, the hazard to her life.   Under this evidence she could not recover.

*A. H. Jayne,* for appellee.

1. All the facts necessary to support the plaintiff's case were proved.   The jury was not moved by prejudice against the defendant, nor partiality for plaintiff.   While it is true the conductor helped plaintiff off, he would not back the train, and did not help her off except in the water, which was not a proper place.

(Counsel here made a lengthy review of the testimony, contending that the verdict was amply sustained by the evidence, and that it was in accordance with the instructions of the court.)

2. The principles of law applicable to the case are so familiar that it is not necessary to cite all the decisions, even in our court, bearing on this case.   The quotation by counsel from 33 Pa. 318 was, perhaps, applicable in that case, but not in this.   I refer the court to Beach on Railways, §§ 974, 1003, 1004 ; 25 Neb. 772.

Plaintiff exercised proper care and diligence in proportion to the danger to be avoided.   22 Barb. 528.

The quotation from the Indiana case, 6 Am. & Eng. R. R. Cas. 130, announces the correct rule, and it is applicable to the plaintiff's conduct here. But, as was said in the same case on page 133, " it is the duty of railroad companies to provide to regular passenger stations suitable and safe means for alighting from trains." See the cases there cited, and especially *Stewart* v. *R. R. Co.*, 53 Tex. 289 ; Shear. & Redf. on Neg. §§ 275, 473, 506.

If any act is directed by the agent of the railroad company in charge at the particular spot, the plaintiff is justified in obeying such instructions, if it was within the ostensible authority of such agent, and was not unmistakably dangerous and rash ; and the plaintiff in such case would not be charged with contributory negligence although the act should be one which, apart from the circumstances, would be deemed negligence. Shear. & Redf. on Neg. §§ 473, 506, and note 1.

A ferry company is bound to furnish sufficient approaches. 25 Fed. Rep. 627.

Railroad companies must carry passengers to their respective places of destination, and set them down safely, if human care and foresight can do it. 23 Pa. 149 ; 62 Am. Dec. 323 ; Beach on Con. Neg. § 57.

The plaintiff was compelled to get off where she did. The conductor having refused or failed to back the train, and she not knowing at what moment it would move out, the question of her negligence was one of fact for the jury. 44 Miss. 466 ; 71 Tex. 274.

A passenger who is injured in alighting from a train according to the direction of the conductor, cannot be charged with contributory negligence, unless, by obeying the directions, he is exposed to an obvious risk which a prudent man would not incur. See Patterson's Ry. Ac. L. §§ 261, 265, 270 *et seq.*, and cases there cited.

Campbell, J., delivered the opinion of the court.

The verdict should have been for the defendant, and the jury might very properly have been so instructed. We are not able to discover any violation of the right of the plaintiff or any failure

of duty on the part of the defendant, in the matter complained of in this action. Pearson was a mere "flag-station," where there was no depot or accommodation for passengers, no agent, and no tickets for sale, but at which persons might get on or off the train, when stopped there. A public road crossed the railroad there, and the usual place of stopping for passengers to get on or off was somewhere about that road, but there was no particular place to stop. The surface of the earth was level, and nearly the same about there, and one place was as good as another to get on or off the train. Ordinarily, there could be no choice of one spot over another to get on or off a car, but on the occasion out of which this action arose, the surface of the earth was wet from much rain, and water was encountered by the plaintiff in sufficient quantity to wet her feet. If the train had been stopped, so as to let her off at the public road, she would have encountered mud instead of water. The running of the train a little past the public road was explained by the presence on the side track of a freight train and some box cars. The side track united with the main line but a few feet from the public road, and it was necessary to clear the way for it to pass on to the main line. The plaintiff went to the door of the car to get off, and was on the step ready to descend to the ground, waiting the assistance of the conductor, when he arrived and rendered it, and she alighted of her own free will, not requesting any change of the position of the car, but remarking on the bad place to put off a lady, which was responded to by the conductor, who assented to her remark, and stated that "it did not matter, so it was the station," or something like that. We deplore the misfortune of Mrs. Stacy, in suffering ill consequences from getting her feet wet, but it should not be visited upon the railway company unless it did her some wrong, and thereby produced the harm done her, and this cannot be affirmed. The place was perfectly safe and convenient for the ingress and egress of passengers, ordinarily. It was made bad on this occasion by very heavy and continued rains. It was the ill fortune of this plaintiff to be a passenger, and debark at this place, when there was "water everywhere," and she got her feet wet, and suffered from it, but upon the facts disclosed, she has no just claim

against the railway company by reason of it. It is probable that the jury was misled by the ninth instruction for the plaintiff. It may be construed as authorizing a recovery because of the absence of "provision" at Pearson for the convenience of passengers which would have saved her from getting her feet wet. It was not ground for recovery that at this place there were no special accommodations for passengers. The place was safe enough, and ordinarily convenient as stated above, and was not so at the time spoken of only because of a rather unusual concurrence of circumstances.

The court correctly instructed the jury for the defendant ; and it is impossible to account for the verdict, except upon the assumption that the jury felt authorized to find for the plaintiff because of the absence of special accommodations for passengers which would have kept her off the wet ground.

*Reversed and remanded for a new trial.*