# Richmond.

## MITCHELL v. SOUTHERN RAILWAY COMPANY.

### March 16, 1916.

### Absent, Kelly, J.

1. DEMURRER TO EVIDENCE—*Self-Contradictory Statements of Demurree.*— Even upon a demurrer to the evidence, the court is not bound to accept as true a statement made by the demurree in his testimony which, while not a physical impossibility, is rendered so improbable from the vague, uncertain and self-contradictory statements of the witness on cross-examination as to deprive it of probative force.

2. CARRIERS—*Passengers—Flag Stations—Platforms—Lights.* — A railroad company is not bound to have a platform at a mere road crossing at which trains stop on signal simply for the convenience of those desiring passage, nor to have a light at such flag-stop at a time when no train is expected and there is no occasion to provide a light.

3. CARRIERS—*Passengers—Flag Station—Safe Approach.*—A passenger alighting at a flag-stop at which there is a passenger station the location of which he knows and which he sees, and the approach to which is smooth and safe cannot recover for an injury received by falling into a hole while going for assistance in a different direction to a signal tower of a railroad company which was not designed for the accommodation of passengers, but to regulate the movement of trains, and which the company was under no obligation to make safe for passengers.

Error to a judgment of the Circuit Court of Fairfax county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Leo P. Harlow,* for the plaintiff in error.

*John S. Barbour* and *Moore, Keith, McCandlish & Hall,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is a suit brought by Mrs. Mitchell against the Southern Railway Company to recover damages for an accident which befell her on the 11th of October, 1912. After all the evidence was introduced the defendant demurred and the court rendered judgment sustaining the demurrer, and the case is before us upon a writ of error.

There are two counts in the declaration. The first alleges that the plaintiff, on the 11th of October, 1912, took passage on the defendant's train at Fairfax station, in Fairfax county, to go to Lincolnia, in Fairfax county, and paid her fare thereto; that defendant's conductor refused to stop the train at Lincolnia, but compelled her to leave the train at one of defendant's stations called Edsalls, in Fairfax county, between Fairfax and Lincolnia; that the station premises at Edsalls were in total darkness and she was wholly unfamiliar with same; that neither guide nor light were furnished her, and while groping around in the darkness, endeavoring to find her way from the premises, she got upon defendant's platform, stumbled over a rotten board therein and fell, becoming entangled in the wires, spraining her left ankle, badly bruising her left side and sustaining a severe nervous shock. The negligence charged in this count is the putting off of the plaintiff at the wrong station, having the premises in darkness and in an unsafe condition, and furnishing her with no assistance.

The second count treats the plaintiff as having gotten on at Fairfax to go to Edsalls, and charges negligence in failing to carry plaintiff safely on her journey and give her safe egress from defendant's premises at Edsalls. It states the defendant's duty "to use due and proper care to safely carry the plaintiff on said journey and to that end to exercise due and proper care to provide at Edsalls (where plaintiff was to alight) safe and suitable pathways properly lighted and not likely to occasion injuries to passengers passing along said pathways in

coming from or going to defendant's trains at said point." The allegations of this count as to the condition of the station premises and how the injury occurred are the same as in count No. 1.

We will take up the evidence applicable to the second count a statement of which will show that the plaintiff never was accepted by the railway company as a passenger to Lincolnia.

On the night of the accident Mrs. Mitchell came to Fairfax station and applied to the defendant's agent for a ticket on train No. 28 to Lincolnia. The agent declined to sell her such a ticket, stating that train No. 28 did not stop at Lincolnia and under the rules of the company he could not sell her a ticket to that station. Notwithstanding this statement, the plaintiff boarded train No. 28, and tried to persuade the conductor to stop and put her off at Lincolnia. The conductor declined to comply with her request for the reason that it was not a stop for No. 28, and stated that he could either take her on to Alexandria or put her off at Edsalls, or some other flag stop station. She thereupon requested the conductor to put her off at Edsalls and paid her fare to that point only, the fare being twenty-five cents, to which was added the usual ten cents when fares are paid on trains, making the total fare paid by her thirty-five cents, whereas the fare to Lincolnia would have been forty cents, if paid on the train by a passenger boarding a train at a station where tickets are sold. When the train stopped at Edsalls plaintiff got off, and the testimony of the conductor and brakeman is that they assisted her in landing safely, and helped her off with her bundles. The Southern railway is double tracked. Upon the easterly track trains pass which are moving to the north and upon the westerly track trains pass which are bound for the south. There is a small building to the west of the south-bound track at Edsalls for the accommodation of passengers. On both sides of this passenger station, running parallel with the railroad, there is a gravel platform 162 feet in length and about ten feet in

width.   Just to the east of the easterly track there is a building called a signal tower, occupied by a telegraph operator.   It is not intended for the accommodation of passengers, and is in no sense a public place.   There is no ticket office there; the operator does not check or handle baggage; nor is it a Western Union telegraph office.   The duties of the operator are to receive and transmit orders and to flag trains.   To enable the operator to discharge his duties in making necessary signals, there is a system of rods and wires passing from the signal tower to the ground and running along for a considerable distance parallel with and a few inches from the easterly rail. For the accommodation of the operator these rods adjacent to the tower are covered with a boxing or platform.

When the train under consideration reached Edsalls, Mrs. Mitchell got off.   She had with her a number of bundles, and according to the testimony of the conductor and brakeman she was assisted in alighting from the left-hand side of the car, so that when she reached the ground she was in between the two tracks, and from that point to the station shed there is a smooth and safe walkway.   Mrs. Mitchell, in testifying as to her leaving the train, insisted that she got off on the right-hand side of the car, but in this respect her testimony is self-contradictory in a high degree.   To the very last question which was asked her she insisted, it is true, that she got off on the right-hand side of the train, but in the course of her testimony she made statements that were absolutely contradictory of that position.   She stated:

"The flagman helped me down, and the conductor stood on the platform.

"Q.   He helped you down with the bundles?   A.   The flagman did.   The flagman treated me as a gentleman.   .   .   .

"When the train moved off, Mrs. Mitchell, where were you standing?   A.   Standing right there between the tracks.

"Q.   Standing between the tracks?   A.   Yes, sir, right where they put me down.

"Q. You were standing between the tracks—the north bound and south bound tracks? A. There are three tracks along there.

"Q. Three tracks? A. There is a switch track.

"Q. You were standing between the tracks? A. Yes, sir.

"Q. You remember that distinctly? A. Yes, sir.

"Q. There was a track on each side of you? A. Yes, sir, there was a track on each side. There is a switch track comes in, but I don't know how far it comes in.

"Q. You are positive about that? A. I certainly am.

"Q. At the point you were put off, you were between the tracks. A. Yes, sir.

"Q. And the tracks caused by switching, go from one side to the other? A. Yes, then I was close to the Edsall side, because it was only a few feet before I struck the platform.

"Q. I want you to be sure about that, that you are certain that you got off between tracks—that there was a track on each side. A. You can see on the picture that there are two tracks.

"Q. The track that the train went on was on one side of you and there was another track on the other side of you? A. Yes, sir.

"Q. And that was a few feet, you think, below the tower? A. Yes, sir, a little this side.    .    .    .

"Q. Before you got to the platform you did actually cross one track? A. Yes, I did actually cross one track.

"Q. You are certain about that? A. I certainly am.

"Q. On the opposite side from the tower there was a shed there for passengers, was there not? A. Yes, sir, supposed to be.

"Q. You knew the shed was there? A. I guess I have seen it when I passed there.

"Q. And you knew the track foreman's cottage was there? A. Yes, sir, I knew it was there, but I knew he was away, because one of my sons helped to move him away the week before."

An inspection of the photographs and the uncontradicted evidence of the witnesses establishes beyond peradventure that at the point under consideration there are two tracks, and that a person getting off on the left-hand side of the car as it moved to the north would be between the two tracks, while a passenger alighting from the train on the right would be within about eighteen inches of the system of rods and wires heretofore referred to and in imminent danger from a passing train. When we consider the undisputed fact that this old lady weighed 230 pounds, it is hardly conceivable that she could have stood in safety within the space between the overhang of the car and the rods and wires while the train moved on by her. It may not amount to a physical impossibility, but it is in such a high degree improbable that no court ought to accept it, even upon a demurrer to evidence. We do not mean to impute to Mrs. Mitchell an intentional departure from the truth, but her evidence is so vague, uncertain and self-contradictory as to deprive it of probative force, and in reaching that conclusion we exclude from consideration the conflicting testimony of other witnesses and rely wholly on the ordinary tests of credibility as applied to the statements which she herself has made.

But let it be granted that everything occurred just as she has stated, it does not at all affect the result. Suppose her to be standing when the train has passed in close proximity to the system of rods and wires connected with the signal tower. The shed for the reception of passengers was in sight. She herself so states and there can be no question about it. To that shed, which was built for the accommodation of passengers and in front of which, as we have stated, there was a smooth and safe gravel walk, it was her duty to go. Instead of that she went in the opposite direction to the signal tower, which was not designed for the accommodation of passengers and which the railroad company was under no obligation to make safe for them.

Nor under the circumstances of this case was the absence of a light at the passenger shed proof of negligence upon the part of the railway company. This was not a regular station but a flag stop, and at the time in question no train was expected and there was no occasion to provide a light.

At section 1641 of Elliott on Railroads it is said that, "A railroad company is not bound to have a platform at a mere road crossing at which trains stop on signal for the mere convenience of those desiring passage, nor to have a platform on each side of the track, and if it has a reasonably safe and suitable platform it is not liable for a purely accidental injury to a passenger thereon. So, of course, if the passenger is guilty of negligence, which is a proximate cause of his injury, he cannot recover. A passenger is not necessarily negligent in going to his train in the usual way in the dark or in unintentionally getting out of the proper way in the dark in seeking a safe place, but if he recklessly and unnecessarily wanders about in the dark and walks off of the paltform, or the like, or goes through a dark passage or down a dark stairway in making his exit, when other passages or ways, plainly intended for that purpose, are properly lighted and open to his sight, he cannot recover for an injury received in consequence thereof."

Conceding all that Mrs. Mitchell asserts to be absolutely true, it was her plain duty to go to the passenger station, the location of which she knew, and which, indeed, she saw, and the approach to which was smooth and safe; but instead of that she went in a direction which was unsafe and which the railway company was not bound to make safe for passengers.

In *Mich. Cent. R. Co.* v. *Coleman,* 28 Mich. 440, it is held that, "Where a railroad company has a platform and other facilities for entering and leaving the cars with safety on the depot side of their track, the failure to have the opposite side likewise prepared as a place for entering and leaving the cars cannot be regarded as negligence; they may select and adhere to such arrangement of their depots and platforms as they see

fit, if those they make are safe and commodious.    Passengers cannot be supposed to be ignorant of the necessity and use of platforms, and when a platform is in plain sight, which they must know was made for their use, they cannot properly complain that they are not accommodated; they are required to conform to the reasonable business arrangements of the railroad."

We think, upon a demurrer to evidence, it may be stated that the facts are that Mrs. Mitchell applied for a ticket to Lincolnia of the station master at Fairfax station and was refused, because the train she proposed to take did not stop at that point; that upon undertaking to enter the car she was told by the brakeman that the train did not stop at Lincolnia, but upon her insistence she was permitted to enter the train. When the conductor came for her ticket she had none, but she told him that she wished to be put off at Lincolnia.    This he declined to do, asserting that he had no authority to do so. Thereupon, after some chaffering, it was understood that she was to be put off at Edsalls, and she paid her fare to that point. Arriving at Edsalls, and assuming her statement to be true, she was assisted to alight from the train by the conductor and brakeman upon the right-hand side next to the wires, rods and signals.    When the train moved on, instead of going to the passenger shed, which she saw, and the use of which she is presumed to have known, and in point of fact admits that she did know, she crossed the easterly track and went towards the light in the signal tower, in order to get assistance, fell and was injured.    Under such circumstances, we think it plain that there could be no recovery, and that the judgment of the circuit court should be affirmed.

*Affirmed.*