## Wytheville.

### NORFOLK AND WESTERN RAILWAY COMPANY V. SIMMONS.

June 10, 1920.

1. NEW TRIALS—*Verdict Based Upon Improbable Evidence—Evidence Contrary to Physical Facts.*—Courts will not allow verdicts to stand when they rest upon evidence which is contrary to the physical facts and human experience, and hence incredible.

2. NEW TRIALS—*Verdict Based Upon Improbable Evidence—Evidence Contrary to Physical Facts—Case at Bar.*—Testimony that the driver of an automobile approaching a railroad crossing within about eighteen feet of the track "tramped" the clutch which should have released the engine, and that both the service brake and emergency brake were applied, yet nevertheless the machine continued to move slowly forward to the point of collision, is not incredible within the rule that verdicts based on evidence contrary to the physical facts and human experience will not be sustained. That machinery gets out of order, becomes defective, and fails to operate, is a matter of common knowledge.

3. APPEAL AND ERROR—*Objection to Evidence by Party Who Elicited the Same Facts.*—An objection to the admissibility of evidence is unavailable to one who has himself elicited the same facts in the cause.

4. INSTRUCTIONS — *Refusal to Grant Instructions — Repetition.* — Where the instructions given by the court were amply sufficient to present the case properly for the consideration of the jury, the refusal of other instructions is not error.

5. INSTRUCTIONS—*Refusal to Grant—Directing Verdict.*—An instruction directing a verdict upon a partial view of the evidence is objectionable.

6. INSTRUCTIONS—*Directing Verdict.*—An instruction is objectionable which violates the spirit, if not the letter, of the Virginia statute which forbids a trial court to direct a verdict.

7. CROSSINGS—*Signals—Statute Mandatory.*—Section 1294d, subsec. 24, Code of 1904 (Code of 1919, section 3958), providing for signals by trains upon approaching crossings, is mandatory, and when there is a failure to obey the statute and an

accident happens as the proximate cause of such disobedience, the company cannot escape the imputation of negligence, although it substituted another warning signal for that prescribed by the statute, even though such signal was equally as effective as the statutory warning.

8. CROSSINGS—*Signals—Other Signals than the Statutory Ones— Contributory Negligence.*—As the law stood when the cause of action in the instant case arose, if plaintiff's own negligence proximately contributed to an accident at a crossing, he could not recover, notwithstanding the negligence of the company in failing to give the statutory signal. The benefit which can be claimed by the company from having given some other warning signal than that prescribed is not the absolution from the consequences of its own negligence, but merely the imputation of contributory negligence to the plaintiff as being partly responsible for his own injury.

9. CROSSINGS—*Signals—Other Signals than the Statutory Ones— Contributory Negligence.*—It will be observed that the Code of 1919, sections 3958, 3959, materially changes the law in this respect. The new provision measurably relieves the traveler of the consequences of his own contributory negligence, where the operators of trains fail to give the statutory signals. Instead of excluding the plaintiff from any recovery and making his contributory negligence a complete bar to the action, it, if the other requisites therefor exist, allows a recovery, requiring the jury, however, to consider the contributory negligence of the plaintiff in mitigation of damages.

10. CROSSINGS—*Look and Listen.*—A traveler approaching a crossing must both look and listen, and he must do this at such times and places as will make looking and listening reasonably effective in assuring him whether or not it is reasonably safe for him to proceed.

11. CROSSINGS—*Signals — "Continuously," "Alternately," "Intermittently."*—Code of 1904, section 1294d, subsec. 24 (Code of 1919, section 3958), provides that on approaching a crossing "such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing." An instruction offered upon the theory that there might be definite intervals between the soundings of the whistle was properly refused.

12. CROSSINGS—*Signals—"Continuously," "Alternately," "Intermittently."*—The statute requires not "intermittent" but continuous signals. The word "intermittent" embodies the idea of temporary discontinuance, interruption, cessation, pause, while the controlling word used in the statute is "continuously," and

the requirement is that the bell shall be rung or whistle sounded *continuously*, and "continuously" is antithetic to intermittently.

13. CROSSINGS—*Signals*—*"Continuously," "Alternately," "Intermittently."*—The word "alternately" in the statute authorizes a different warning signal, that is the combination of both bell and whistle, but is not intended to qualify the meaning or to impair the force of the word "continuously," used just previously. "Alternation" means "the occurrence or action of two things in turn," first one and then the other, as of day and night, and the two things which may be done alternately under this statute are to ring the bell and to sound the whistle. When one sound ceases the other should begin just as promptly as is reasonably practical.

Error to a judgment of the Circuit Court of Botetourt county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Staples & Cocke,* for the plaintiff in error.

*Haden & Haden,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The owner of an automobile truck, with trailer attached thereto, both loaded with household goods, sued the Norfolk and Western Railway Company for damages caused by a collision at a highway crossing in the county of Botetourt. There was a verdict and judgment in favor of the plaintiff, of which the company is here complaining.

While the exceptions and assignments of error are numerous, the case presents few if any questions which have not been fully heretofore considered and adjudicated by this court.

There are certain objections to the pleadings, but as counsel for the company treat them scantily in their briefs, we decline to accept their invitation to enter upon an investigation which they apparently think unprofitable. It is sufficient to say that, in our view, these alleged errors are harmless if existent, and inasmuch as the case has been fully and fairly tried upon the merits, they may be ignored.

[1, 2]   One point much emphasized is the claim that the evidence upon which the plaintiff relies is so improbable, because against reason, that no verdict in favor of the plaintiff can be based thereon; that courts will not allow verdicts to stand when they rest upon evidence which is contrary to the physical facts and human experience, and hence incredible. While the rule is fully recognized in this court (*N. & W. Ry. Co.* v. *Crowe*, 110 Va. 798, 67 S. E. 518; *N. & W. Ry. Co.* v. *Strickler*, 118 Va. 153, 86 S. E. 824; *Mitchell* v. *Southern Ry. Co.*, 118 Va. 642, 88 S. E. 56), we cannot agree that it applies to the testimony thus criticised in this case. The evidence is that of the witness, Vass. He was with the driver of the automobile at the time of the accident, and having testified that they stopped about ninety feet away from the crossing to look and listen for an approaching train (though looking at that place was clearly ineffective because there was an intervening hill which shut off their vision) and hearing no warning sound they drove carefully to within about eighteen feet of the railway track; intending to stop there to look for the train; that just about the place where they had determined to stop, he saw the approaching train, and called the driver's attention to it; that the driver "tramped" the clutch which should have released the engine but the machine continued to go forward, then the service brake was applied, and the machine still continuing to move, that he (the witness) applied the emergency brake, but it nevertheless continued to move slowly forward to the point of col-

lision. In the meantime he had advised the driver to jump to save himself, and that he (Vass) did jump, while the driver lost his life.

That machinery does get out of order and does become defective and fail to operate is a matter of such common knowledge, that we are of opinion that this testimony, while unsatisfactory and far from convincing, is not incredible, and that the rule relied upon has no application thereto.

[3] The third assignment of error is to the effect that the court erred in overruling a motion to instruct the jury to disregard the testimony of the witness reciting certain alleged statements of Mankspile, the deceased driver. The statements were not themselves very material or impressive, but simply related to a conversation between them as to whether, when they made the stop ninety feet away from the crossing, he (the witness) should get off and go forward to the railroad track, where he could see, in which the driver said there wasn't any use in that, that he would stop the truck up near to the track where it could be seen from the seat of the automobile. If material, substantially the same evidence would have remained in the record, even if this which is objected to had been stricken out, for the company's attorney cross-examined the witness, Vass, fully as to this very conversation and elicited in such cross-examination the identical evidence to which this exception relates.

In *C. & O. Ry. Co.* v. *McCarthy*, 114 Va. 181, 76 S. E. 319, this is said as to a similar contention: "This court has repeatedly held that an objection to the admissibility of the evidence is unavailable to one who has himself elicited the same facts in the cause. *Douglas Land Co.* v. *Thayer Co.*, 107 Va. 292, 58 S. E. 1101; *Va. & S. W. R. Co.* v. *Bailey*, 103 Va. 205, 49 S. E. 33, and authorities there cited."

The assignment is without merit.

[4-6] There are numerous assignments of error based

upon the refusal of the court to grant certain instructions offered by counsel for the company. The refusal of some of these instructions was proper, because the court gave the jury nine instructions which were amply sufficient to present the case properly for their consideration. Several others of those refused are based upon the insistence of the company's attorney's that there is no sufficient evidence in the case upon which any verdict against it could be founded. There were some which were objectionable because they concluded with a direction to find for the defendant, and were based upon a partial view of the evidence, and some were objectionable because violative of the spirit, if not the letter, of the Virginia statute which forbids a trial court to direct a verdict.

[7, 8] The negligence alleged is the violation of section 1294-d, subsection 24, Pollard's Code (Code 1919, sec. 3958). That section as it formerly read provided that the whistle of a train approaching a crossing "shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any highway or crossing, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require. And the said company shall be liable for damages which shall be sustained by any person by reason of such neglect."

There was a conflict of evidence as to whether the required crossing signal was given, and one of the company's instructions which was refused (No. 8), reads as follows:

"The court instructs the jury that even though the defendant failed to comply with the statute as to the ringing of the bell and the sounding of the whistle as in said statute set out, nevertheless if the whistles which were sounded

by one of the defendant's engineers were sufficient to give to a traveler approaching the crossing with ordinary care a warning equally as effective as would have been the sounding of the whistle and ringing of the bell in the exact manner prescribed by the statute, then the failure of the defendant to comply with the exact requirements of the statute is not the proximate cause of the injury complained of and the jury must find their verdict for the defendant."

There are other objections to this instruction, but we will discuss only one, and that is the idea therein embodied that a railway company may escape the imputation of negligence by substituting some other warning signal for that prescribed by the statute, and claim for such substituted warning equal effectiveness. As has been frequently said, this statute and similar statutes which were passed for the protection of human life are mandatory. It is the imperative duty of the railway companies to observe them. When there is a failure to obey such statute and an accident happens as the proximate cause of such disobedience, the company cannot escape the imputation of negligence. It is nevertheless also true that (as the law then was) if the plaintiff's own negligence proximately contributed to the accident, he cannot recover, notwithstanding the negligence of the company in failing to give the statutory signal. The benefit which can be claimed by the company from having given some other warning signal than that thus prescribed is not the absolution from the consequences of its own negligence, but merely the imputation of contributory negligence to the plaintiff as being partly responsible for his own injury. While there may be expressions in the opinions of this court which, segregated from other parts of the opinion and construed without reference to the facts in the particular case, appear to be contrary to this view, a careful consideration of them will show that the court has never intended such a construction. For instance, in the case cited

54

and most relied upon, *Atlantic & Danville R. Co.* v. *Reiger,.* 95 Va. 427, 28 S. E. 590, 593, Judge Buchanan said: "The defendant had the right to have the court instruct the jury, either by an addition to that instruction or by an independent instruction, that, although they might believe that the defendant had failed to blow the whistle as required by law, yet if the defendant gave another or other warnings, which in fact notified the plaintiff of its approach, or which would have given him notice if he had been exercising ordinary care, so that he could have avoided the injury, he was not entitled to recover. But it was not proper to leave to the jury the question of determining whether the sounding of the whistle at some point less than 300 yards from the crossing was as good a notice of the approaching locomotive as that required by the statute. The legislature had determined where the whistle was to be sounded, and it was not for the court or the jury to determine that sounding it at some other place, or in some other manner, was equally as good. The question which the jury had to determine was not whether one kind of warning was as good as another, but whether, under all the circumstances of the case, although the defendant may have failed to sound the whistle in the manner required by statute, the plaintiff's injury was proximately caused by the defendant's negligence." And this view is confirmed in *Simons* v. *Southern Ry. Co.,* 96 Va. 155, 31 S. E. 7; *C. & O. Ry. Co.* v. *Hall,* 109 Va. 299, 63 S. E. 1007; *Atlantic Coast Line R. Co.* v. *Church,* 120 Va. 732, 92 S. E. 905; *Shiveley's Adm'r.* v. *N. & W. Ry. Co.,* 125 Va. 384, 99 S. E. 651.

[9] It is observed that the Code of 1919 has amended this section by omitting the last clause, which reads, "and the said company shall be liable for damages which shall be sustained by any person by reason of such negligence" (Code 1919, sec. 3958), and substituted therefor section 3959, which materially changes the law by providing in

effect, that if the employees in charge of the railroad engine fail to give the crossing signals required by law, then the fact that the traveler on the highway fails to exercise due care in approaching the crossing shall not bar a recovery for injury or death, or for injury to or destruction of property, where a collision results on such crossing, "but the failure of the traveler to exercise such care may be considered in mitigation of damages." This new section, then, measurably relieves the traveler of the consequences of his own contributory negligence, where the operators of trains fail to give the statutory signals. Instead of excluding the plaintiff from any recovery and making his contributory negligence a complete bar to the action, it, if the other requisites therefor exist, allows a recovery, requiring the jury however to consider the contributory negligence of the plaintiff in mitigation of damages, thus changing the law as declared in *Atl. & D. Ry. Co.* v. *Reiger, supra,* and *Simons* v. *Southern Ry. Co., supra.* This new statute was not effective when this case was tried.

[10] Several instructions were offered on behalf of the company and refused, in which it was substantially stated that the traveler approaching a crossing must, in order to avoid accident, look and listen at a place where looking and listening are effective, and that he must do this at a time and place where looking and listening will assure him whether or not it is safe to proceed, or advise him definitely and certainly whether or not a train is approaching. The court however did give one instruction (and this was sufficient) which correctly stated the duty of a traveler approaching a crossing, using this language: "He must both look and listen, and he must do this at such times and places as will make looking and listening reasonable effective in assuring him whether or not it is reasonably safe for him to proceed." It is only necessary to cite these cases to show that the court took the proper view. *Stokes* v. *Southern*

*Ry. Co.,* 104 Va. 825, 52 S. E. 855; *Southern Ry. Co.* v. *Jones,* 106 Va. 412; 56 S. E. 155; *Smith* v. *N. & W. Ry. Co.,* 107 Va. 725, 60 S. W. 56.

Then the court was asked to instruct the jury thus:

"5. The court instructs the jury that if they believe from the evidence that at any point more than 300 and less than 600 yards from the crossing one of the engineers of defendant's train sounded two blasts of the whistle, and thereafter continued to sound the whistle intermittently, with no greater interval than four seconds between such blasts, until the crossing was reached, then the defendant is without liability in this case, and the jury must find a verdict for the defendant.

"6. The court instructs the jury that if they believe from the evidence that at any point more than 300 and less than 600 yards from the crossing one of the engineers of defendant's train sounded two blasts of the whistle and thereafter continued to sound the whistle intermittently until the crossing was reached, then the defendant is without liability in this case, and the jury must find a verdict for the defendant.

"7. The court instructs the jury that by the term 'intermittent' is not meant continuously, nor with bare instants of silence of the whistle, but that if the interval between the whistles is practically a very brief time, then the sounding of the whistle has been intermittent, and the defendant has discharged its full duty, and the verdict of the jury must be for the defendant."

[11-13] The jury had already been instructed in the language of the statute, that the whistle should be sounded at least twice at a distance of not less than 300 nor more than 600 yards from the crossing, and that "such bell shall be rung or whistle sounded continuously or alternately until the engine has reached the highway crossing." The instructions just quoted and which were refused are based

upon an erroneous conception of the statute, which requires. a warning substantially continuous from a point not less than 300 yards before the crossing is reached. After the first warning signal, the sharp sounding of the steam whistle at least twice, the company's employees may ring the bell continuously until the engine reaches the crossing, or in the alternative they may blow the whistle continuously until the engine reaches that point. They have a still further option—they may alternate the ringing of the bell with the blowing of the whistle until the crossing is reached. It is noticed that one of these instructions is offered upon the theory that there may be definite intervals between the sounding of the whistle, and undertakes to fix these intervals at four seconds. This was because a witness, when being cross-examined on this subject, while the company's. attorney had his watch in his hand testing him, answered fixing that interval according to the watch as his recollection of the time equivalent to that which intervened between certain blasts of the whistle which he said he had heard. Then the other two instructions just referred to introduce a word not found in the statute, indicating that the whistle may be sounded "intermittently" in this period during which the warnings are required. We think the statute can bear no such construction. The word "intermittent" embodied the idea of temporary discontinuance, interruption, cessation, pause, while the controlling word used in this statute is "continuously," and the requirement. is that the bell shall be rung or whistle sounded *continuously,* and "continuously" is antithetic to intermittently. The word "alternatively" in the statute authorizes a different warning signal that is the combination of both bell and whistle but is not intended to qualify the meaning or to impair the force of the word "continuously," used just previously. Alternation means "the occurrence or action of two things in turn," first one and then the other, as of

day and night, and the two things which may be done alternately under this statute are to ring the bell and to sound the whistle. When one sound ceases the other should begin just as promptly as is reasonably practical. So that, in our view, these instructions were also properly refused.

The issue of fact has been determined by the verdict of the jury in the method prescribed by law, we are bound thereby, and hence **perceive** no sufficient reason for disturbing the judgment.

*Affirmed.*