## Yazoo & M. V. R. Co. v. Skaggs.

(Division B. Feb. 21, 1938).

[179 So. 274. No. 32883.]

A. M. Pepper, of Lexington, Burch, Minor & McKay, of Memphis, Tenn., and E. C. Craig, of Chicago, Ill., for appellant.

Barbour & Barbour, of Yazoo City, and Johnson & White, of Lexington, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee, hereinafter referred to as the plaintiff, sued the railroad company, averring that in alighting at night from a passenger coach he was severely and permanently injured by reason of the negligence of the carrier in respect to the stepbox used on that occasion. We will have occasion to note that, as shown by the present record, the plaintiff here is the same person who was plaintiff in Oliver Bus Lines v. Skaggs, 174 Miss. 201, 164 So. 9.

When all the cases on the subject of stepboxes are

grouped around Scott v. Vicksburg, etc., Ry. Co., 150 La. 537, 90 So. 840, 20 A. L. R. 908, which we think is the best-considered among them, the rule is found to be that where a carrier of passengers furnishes a stepbox or footstool to facilitate them in boarding or alighting from its train, it must use due care to see that the stepbox is (1) in good repair and safe in strength, and is so constructed as not to be readily overturned; that when set out for the use of passengers it shall (2) be placed upon a reasonably level and stable surface; and (3) so placed as to be in proper relation to the bottom coach step to which the stepbox is a temporary complement; (4) that at least one efficient, properly placed handhold or handrail shall be supplied alongside the coach steps; and (5) that at night a light shall be furnished sufficient that the passenger may readily see the steps and the stepbox. The carrier is not an insurer, and the passenger on his part is obligated (a) to duly avail of the mental faculties and physical powers with which nature has endowed him, and (b) to make use of the said appliances furnished him by the carrier in the usual and normal manner in which such appliances are intended to be used.

There is no complaint in this case as to the safety of the stepbox, either in its construction or strength; no complaint that it was not in proper repair or of its suitability for the purpose for which it was intended and was used. There is no complaint that there were no efficient, properly placed handrails alongside the coach steps. The complaint is (1) that the stepbox was placed upon rough and uneven ground, and (2) was placed too far back under the coach step, and (3) that no sufficient light was furnished. The railroad company denies that the facts in proof sufficiently support the aforementioned complaints, and says that the evidence discloses that plaintiff did not duly avail of his mental faculties and physical powers, and did not use the appliances furnished

by the carrier for alighting in the manner in which said facilities are intended to be used. These in brief are the material or ultimate issues in the case.

First, as to the complaint that the stepbox was placed upon rough and uneven ground: The place where the accident occurred is denominated in the evidence as a flag station, and upon the whole was properly so denominated. For a distance of approximately seventy feet north and a like distance south of the station house is a gravel area eight to twelve feet wide. next alongside the railroad track, the graveled surface being about level with the cross ties. There is no strict requirement in respect to such areas at a flag station. Alabama & V. Ry. Co. v. Stacy, 68 Miss. 463, 9 So. 349. Compare Cincinnati, W. & M. R. Co. v. Peters, 80 Ind. 168, 172; and see Fulghum v. Atlantic Coast Line R. Co., 158 N. C. 555, 74 S. E. 584, 39 L. R. A. (N. S.), 558, 560. It is not required that the said area shall be graveled, or, if so, that it shall be smooth or level, or free from bumps, ridges, or roughness. The requirement is only that it shall be reasonably safe for those who use it for the purposes for which it is intended and with due care on their part; and as to the place therein where the stepbox is set out for passengers, the requirement is that the area there shall not be unlevel to such a degree, or have bumps or ridges of such height or ruts between them so wide and deep as to cause danger that the stepbox will turn over when properly stepped upon by the passenger.

There is not a word of testimony by any witness here that the height of the bumps or ridges or the depth of the ruts, or that the degree of the want of smoothness or of levelness was sufficient to cause a stepbox to tilt over. All that plaintiff's four witnesses said on that subject were the general responses that the place was not level, that it was not smooth, that it was bumpy, that it "showed to be rough," or a "little rough." Two of the witnesses described it as "an ordinary country getting

off place." Seven of the witnesses averred that it was smooth and level; three of these being persons who had lived within a few yards of the spot for many years. These, together with the trainmen, testified that in all the years of experience at that place no stepbox accident had ever occurred there before, or since, the one here in issue.

Moreover, the witness Martin testified, and his testimony is undisputed, that he was standing near the coach steps with his wife who was waiting to board the train, that he was within three or four feet of the stepbox and saw it plainly when the flagman placed it for the passengers to alight and to board, and that after plaintiff fell, thereby displacing the stepbox, "the flagman turned around and placed the stool back where it was before," and that his wife then got on the train; and his wife testified, also without dispute, that she used the stepbox in getting upon the train and that it was level and not "wobbly." This undisputed evidence amounts to a demonstration.

Plaintiff has argued, nevertheless, that because the stepbox did tilt over, this is sufficient from which the jury could conclude that the roughness or unevenness in the surface was what caused it. Doubtless such an argument might be effective with a jury, but it is wanting in substance when weighed by established legal standards. Looking through its disguise, it is nothing other than an attempt to invoke the doctrine res ipsa loquitur, about which comment, appropriate here, was made in Columbus & G. R. Co. v. Coleman, 172 Miss. 514, at page 522, 160 So. 277. That doctrine (1) has no operation to excuse or dispense with definite proof, by the plaintiff, of material facts which are tangible and are capable of direct and specific evidence, as much within the power of plaintiff to produce as of the defendant; and (2) it is available to establish negligence on the part of the defendant only when the accident is such that, according to ordinary human experience, it could not have hap-

pened without such negligence; from which it follows that the doctrine does not apply when, upon the whole case, there has been specific proof which discloses some reasonable explanation for the happening other than the negligence charged against the defendant.

Second, the complaint that the stepbox was placed too far back under the coach step: There were five witnesses to the accident: the plaintiff, his son-in-law who came down the steps behind him, the flagman, and Mr. and Mrs. Martin. Plaintiff repeatedly said in his testimony that he did not see the stepbox when it was placed on the ground or where it was placed. His son-in-law said that he didn't see where it was placed; and both averred that there was not enough light to see it. They say the flagman dropped the stepbox down but offered no explanation how the box could have passed downward in a curve so as to get under the coach step or too far under, as is plaintiff's contention. The flagman testified that he placed it so that as coming down the coach steps the stepbox was "just like another step exactly." Mr. Martin testified that the flagman "set it down by the steps like you would for a man to come out and step on it," and we have already mentioned that Mr. Martin further testified that after plaintiff fell, thereby displacing the stepbox, "the flagman turned around and placed the stool back where it was before," and that his wife then got on the train using the stepbox.

Plaintiff says, however, that although he did not see the stepbox, "it wasn't in the right place; if it was in the right place I wouldn't have missed it." This is an argumentative assertion, which when broken into its constituents amounts at best to this: "I put my foot down in the proper place, the box was not there, and therefore the box was not in the proper place." But any assertion thus involved that he put his foot down in the proper place is rendered nugatory by his direct statement on cross-examination, when being pressed to dem-

onstrate how he stepped down; that statement being as follows: "As I stepped down the step this way, I might have hit anywhere that night." Moreover, his declaration averred, as already indicated, that the stepbox was too far back under the steps, but he admitted on cross-examination that he couldn't tell on what side of the box his foot struck, whether on the north, south, east, or west side, so that if his answer be of any probative force that the box was not in the proper place because he missed it, then it may as well have been too far to the front or either side, so far as any proof on his behalf is concerned. There are other features in the evidence which, when closely analyzed, lead to the same conclusion, to wit, that the complaint that the stepbox was placed too far back under the steps is not proved by that substantial testimony which is required to sustain a verdict.

Third, the complaint that not enough light was furnished: In accordance with what has already been said about flag stations and the grounds thereabout, it is to be added that where such premises are otherwise reasonably safe, no permanent lighting facilities are required to be furnished. See, for instance, Mitchell v. Southern Ry. Co., 118 Va. 642, 88 S. E. 56. Much is said about insufficient light in the vestibule. No case has been cited, nor have we found any in our search, upon the point as to fixed or permanent lights in a vestibule. This record is not sufficiently full upon that point that we might venture any statement of a rule on the subject, nor is it here necessary. It is sufficient to say here that the evidence introduced by plaintiff himself shows that the flagman was in the vestibule with his lantern, that plaintiff was there present and saw the flagman pick up the stepbox in the vestibule and start down the steps with it, and that plaintiff followed almost immediately behind him.

The testimony is undisputed that in the vestibule,

thence down the steps and then upon the ground, hold-- ing the lantern within four feet of the bottom of the coach steps, the flagman carried with him an electric lantern, twice the power of the oil lantern formerly in service, and that the lantern was of the type used by all trainmen both freight and passenger, and that it was in good condition. We hold that a lantern thus used by trainmen in their difficult work, at all places where they are required to go, over all sorts of railroad ground or grounds, around and under cars, in all seasons and in every eventuality, is good enough and fully sufficient for use to light the vestibule when a passenger is there present and is about to alight, and thence to light the coach steps and the stepbox for the passengers, at a flag station. If all the extra facilities and accommodations which plaintiff seems to contend for were required at flag stations, those stations would have to be discontinued, else the burden of them would be unbearable as compared with the small revenue derived from that service.

Plaintiff, at the time of the accident, was about 68 years old and weighed about 200 pounds. Less than two years before he suffered an injury claimed to have been permanent, see Oliver Bus Lines v. Skaggs, above mentioned, and, according to the weight of the present record, was not in robust health, to say the least. One of his sons-in-law said, and this was not disputed, that his eyesight was not so good as even for a man of his age. He admits that as he went down the coach steps he had bundles under his left arm and carried his right arm by his side, making no use of the handrails. He admits that he did not see the stepbox, but twice asserts with positiveness that he was in a hurry to get off, and repeatedly says that he stepped on the edge of the stepbox with his left heel, but could not say which edge of the box he struck. The flagman corroborated plaintiff as to the hurry of plaintiff when he started, and continued, down the steps.

Under the rule respecting stepboxes and the use thereof heretofore stated, the obligation of the plaintiff was to go down the steps without hurry and to look where he was going; to look for the stepbox and to see that he stepped upon it rather than upon an edge of it, Scott v. Vicksburg, etc., Ry. Co., supra; and to enable him the more certainly to do this he was obligated on his part to use the handrail. The temporarily placed stepbox is to be used in conjunction with the handrails, each as a component facility in the process of boarding or alighting, and particularly the latter and more particularly of an aged man of infirmities. See cases cited 10 C. J., p. 1119, note 47. A party may not complain of an injury by a tool when the efficient cause of his injury was his failure to use the handle.

As this court has frequently said, verdicts and judgments in civil actions must be based on the probabilities of the case, not on possibilities; and a verdict, although it is treated with great respect, has no force to convert a possibility into a probability. After repeated examinations of this record, we are convinced that the reasonable probability as against any one of the several possibilities is that the hurry of plaintiff down the coach steps without using the handrails and without taking care to see the stepbox, caused him to strike the box on an edge with his left heel and that as a natural and probable consequence the front part of his foot turned suddenly downward along the side of the box, and this, with the impetus of his 200-pound body in his hurried descent, caused his knee to buckle and thus the inevitable fall. Such an eventuality has been experienced or observed, in the use of stairways, by almost every person. The conclusion is that the failure of the plaintiff to avail of his mental faculties and physical powers, and his failure to make use of the said appliances in the usual and normal manner in which said appliances were intended to be used, particularly by a man of his age and state of health,

were the sole proximate causes of his injury, and that the carrier is not liable therefor.

Reversed, and judgment here for appellant.