**Floyd O. CRAWFORD and wife, Mrs. Floyd O. Crawford, Plaintiffs-Appellants,**

v.

**J. C. WORTH and wife, Mrs. J. C. Worth, d/b/a Worth Motor Lodge, Defendants-Appellees.**

**No. 30586.**

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1971.

R. L. Netterville, Natchez, Miss., H. Alva Brumfield, III, Law Office of H. Alva Brumfield, Baton Rouge, La., for plaintiffs-appellants.

George Morse, Stanford Morse, Jr., Webb Mize, White & Morse, Gulfport, Miss., for defendants-appellees.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Although other grounds are more vigorously asserted by the losing plaintiffs in this personal injury action appeal, the heart of the matter is that the jury brought back a verdict for the defendants. While such a verdict is not a totally impregnable fortress, few fail to withstand the frontal assault which, to carry the wall, must show the stronghold was constructed contrary to the overwhelming weight of the evidence. Since we find that the verdict in this case had ample support, the basic attack must fail. The plaintiffs' other probes for reversible error through easier collateral sallies are twofold. One asserts that a medical doctor should have been allowed to express an opinion estimate of the water temperature in a motel shower which produced the plaintiffs' burns, and the other complains of refused instructions related to an innkeeper's standard of care and the application of the doctrine of *res ipsa loquitur*. These sorties also fail. We affirm.

## THE FACTS

Stated most favorably to the jury verdict,[1] the proof showed that Mr. Crawford was a commercial guest at the Worth Motor Lodge on the Mississippi Gulf Coast. His room had a combination tub-shower equipped with a single lever control valve which, as it was turned in a clockwise direction, regulated the water temperature through a cycle from cold through progressive stages of warmth to hot. While Crawford was in the shower he received hot water burns over the medial and frontal portions of his thighs and on his genital and abdominal areas. While Crawford's testimony as to the precise manner in which his injury occurred can, at best, be characterized as confused, it shows he was scalded either on completion of his shower, when he became confused and turned the lever clockwise to the full hot position or at the commencement of his bath when he turned the lever to the

---

1. Little v. Green, 428 F.2d 1061, 1066 (5th Cir. 1970).

full hot position, lifted the gate valve on the tub faucet to divert the water to the shower head, and stepped into the shower spray without determining the temperature of the water.[2] When the hot water struck him, Crawford fell to a sitting position in the tub where the hot water continued to pour on his legs and groin until his wife entered the bathroom and helped him from the shower.

Obviously anticipating litigation, Crawford had eight color photographs taken at early stages of his burn recovery in nude and semi-nude poses. To these were later added 12 black and white photographs of the affected area of his body, together with 19 photographs and two drawings of the mechanical equipment in the motel water system. Worth caused two persons experienced in the operation and maintenance of hot water systems to test and examine the motel system; Crawford engaged one such expert. However, Crawford's expert was not employed and did not make an actual examination and test of the system until approximately a year and a half after the accident occurred and until after Hurricane Camille had wrecked the motel.

Crawford was initially treated for burns by a local physician in the emergency room of a Gulfport, Mississippi hospital on the day of the accident. During the succeeding two months he was visited at his home in Baton Rouge by Dr. Frank W. Pickell, who made 11 house calls. These visits were followed by a dozen office examinations over the next year.

*EXCLUSION OF EXPERT TESTIMONY*

On his deposition, after Dr. Pickell testified that he was a graduate of medical school, had completed a one-year internship and a two-year residency, had engaged in private practice for nine years in Alabama and for 28 years in Baton Rouge, and had examined Mr. Crawford at the times indicated, he was asked this question: "Doctor, what degree of water or steam must there be to inflict a burn of the degree that Mr. Crawford had on his body?" Defendant's attorney objected on the lack of the doctor's qualifications to answer the question. Plaintiff's counsel insisted: "Go ahead. You're an expert on the human body. What degree or temperature, if you know, *approximately*," to which the doctor answered, "*Around* boiling or 100° centigrade."

Subsequently in his deposition, Dr. Pickell stated that he had written a paper on fundamentals of the successful treatment of burns and on a wide range of other subjects from liver cysts to hypertension. He also testified that he accomplished additional post-graduate work, though none of it was identified as having been specially related to the field of burns or burn-producing mechanisms. On cross-examination, counsel for the defense asked if the water which caused Crawford's burns must have been at the boiling point, to which the doctor answered, "Around that figure or more or less, the more, the worse the burn." When Dr. Pickell's deposition was offered at the time of the trial the court sustained the objection to Dr. Pickell's testimony on direct examination and allowed the question and answer by defense counsel on cross-examination to be withdrawn.

■■ The federal rule regarding review standards of trial court rulings on expert opinion evidence is stringent. "* * * the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." Salem v. United States Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 331, reh. denied 370 U. S. 965, 82 S.Ct. 1578, 8 L.Ed.2d 834 (1962). In this Circuit's terms: "The

2. In the version most favorable to his case, Crawford testified that he had carefully adjusted the water valve to a medium temperature and that suddenly, and without warning, a rush of scalding hot water or steam burst from the shower head.

expert qualification of a witness is a question for the trial judge, whose discretion is conclusive unless clearly erroneous as a matter of law." United States v. 41 Cases, More or Less, 420 F. 2d 1126 (5th Cir. 1970). Under these applicable review standards we find no reversible error in the trial court's rulings with regard to the admissibility of the questioned portions of Dr. Pickell's deposition.

## REFUSED INSTRUCTIONS

■ Before discussing the propriety of the court's actions in refusing plaintiff's requested instructions, we note that the court's charge relating to an innkeeper's duty to his guests was full and complete.[3] It is also in accord with the only Mississippi precedent. In Picard v. Waggoner, 204 Miss. 366, 37 So. 2d 567 (En Banc 1948), a case in which a guest sued the owner of a lodging house for personal injuries sustained on the premises, the standard of reasonable care adopted was based upon the general authority contained in 43 C.J.S. Innkeepers § 22, and 28 Am.Jur. 579. (This latter authority has been twice

3. An innkeeper is under a duty to exercise reasonable care to furnish reasonably safe appliances plumbing and hot water system in its room that it rents so that guests therein may use the same in the ordinary way and reasonable way without exposing themselves to danger and this duty also extends, as I said, to the hot water system and its controls and is not delegable.

The Court instructs you that if you believe from a preponderance of the evidence herein that the Defendants breached the above duty and did not exercise reasonable care to furnish a reasonably safe room and to maintain the appliances and furniture and plumbing fixtures and the hot water system therein in a reasonably safe condition and that they were thereby negligent and that if you further find from a preponderance of the evidence that said negligence if any, on the part of the Defendants proximately caused or proximately contributed to cause Plaintiffs' injuries, suffering and damages which proximately resulted therefrom, then in that event; it would be your sworn duty to find for the Plaintiffs against the Defendants.

modified and modernized. For current text, see 40 Am.Jur.2d, Hotels, Motels and Restaurants §§ 82, 100 and 104.) See also Restatement of the Law of Torts 2d § 314a[4] and 18 A.L.R.2d 973, particularly § 3.

Four of the rejected instructions told the jury that they must find the defendants negligent if the motel plumbing system was so constructed and maintained as to allow delivery of steam from the hot water pipes serving guest rooms. This element was expressly included in the court's charge. It was not error to refuse to repeat it in plaintiff's chosen language. Fleming v. Michigan Mutual Liability Company, 363 F.2d 186 (5th Cir. 1966).

■ Plaintiffs also object to the court's refusal to submit a charge based upon Miss.Code Ann. § 5131-61, 63 (1942), statutes which relate to hot water tank installations. These statutes are part of Chapter 529 of the Mississippi Laws of 1968 and the act provides that it is to have prospective application only. The court was correct in refusing to give it judicial ex post facto application.

The Court further instructs you that the Defendants herein were under a duty to Plaintiffs and other guests in the motel to exercise reasonable care to install and maintain a plumbing and hot water system that would not emit water from the shower that would be overheated to the point that it would constitute a danger to guests using it in an ordinary and reasonable manner.

\* \* \* \* \*

The Court instructs you that a motel operator is not an insurer of a guest's safety but is only under a duty to exercise reasonable care to keep his premises, including the equipment therein, in a reasonably safe condition.

4. This text fixes an innkeeper's standard of care as similar to that imposed on a possessor of land who holds it open to the public. There are numerous Mississippi decisions fixing the standard of care owed by such business proprietors to public invitees as a duty of reasonable care. See e. g., Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss.1967), and First National Bank of Vicksburg v. Cutrer, 214 So.2d 465 (Miss.1968).

Finally, plaintiffs complain of the court's refusal to grant an instruction embodying the principle of *res ipsa loquitur*, which Mississippi says should be strictly limited and cautiously applied. Clark v. Vardaman Mfg. Co., 249 Miss. 42, 162 So.2d 857 (1964). Fundamentally, this doctrine was inapplicable to the fact circumstances of the present case because Mississippi has long held that it has no operation to excuse or dispense with definite proof of material facts which are tangible and are capable of direct and specific evidence, as much within the power of the plaintiff to produce as within the power of the defendant. Yazoo & M. V. R. R. Co. v. Skaggs, 181 Miss. 150, 179 So. 274 (1938). The doctrine is just one form of circumstantial evidence. Dees v. Campbell, 183 So.2d 624 (Miss.1966). Since plaintiff was not disabled in any demonstrated way from testing the specific physical capabilities of the defendant's water system and since the issue was put to the jury to resolve a specific fact conflict as to whether excessively heated water caused plaintiffs' injuries, we hold the lower court was correct in rejecting the res ipsa instruction.[5]

## *SUFFICIENCY OF THE EVIDENCE*

This brings us to the assault on the citadel—the argument that the verdict of the jury was against the great weight of the evidence. The most persuasive force this argument can muster is that the proof showed that portions of the plumbing system violated the National Plumbing Safety Code which became applicable to the Worth Motor Lodge after it had been constructed, by virtue of the annexation of its property by the City of Gulfport which had adopted this Code.

Without deciding whether such an annexation would create a duty on a property owner to bring preexisting plumbing construction into compliance with such a code, it suffices to say that this violation, if there was one, would only tend to show negligence, not causation. The conflicting testimony about the actual and potential functioning of the system was submitted to the jury and there was an abundance of credible evidence to sustain their verdict for the defendants. That ends the matter.

We find no error in the actions of the trial court. The judgment appealed from is

Affirmed.

---

5. The evidence was in sharp conflict as to whether the system was capable of emitting steam. Mr. Crawford testified that this is what struck him and his expert witness testified that the system was capable of producing steam. On the other hand, the experts produced by the defendant testified to the contrary. Mississippi

has frequently held such an instruction improper in cases involving injuries to business invitees on premises open to the public. *See* F. W. Woolworth Co. v. Stokes, 191 So.2d 411 (Miss.1966) and Daniels v. Morgan & Lindsey, Inc., 198 So.2d 579 (Miss.1967).